## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOAN CALLUM, | : | NO. 3:02CV-0057 (AHN) |
| *Plaintiff,* | : | |
| | | |
| V. | : | |
| | | |
| JOSEPH MARSH, *et al.,* | : | |
| *Defendants.* | : | MARCH 3, 2004 |

### DEFENDANT'S
### PRE-TRIAL MEMORANDUM

In accordance with the Standing Order Regarding Trial Memoranda in Civil Cases, the defendants hereby offer the following pre-trial memorandum:

**1. TRIAL COUNSEL:**

**For the Defendants:**

> Stephen R. Sarnoski
> Assistant Attorney General
> MacKenzie Hall
> 110 Sherman Street
> Hartford, Connecticut  06105
>
> Tel. (860) 808-5450

**2. JURISDICTION:** The jurisdiction of the court is invoked under the provisions of Sections 1331 and 1343(3)  of Title 28, and Sections 1983 and 1988 of Title 42 of the United States Code.

**3. JURY/NON-JURY:** The plaintiff has claimed a trial by jury of all issues raised in his complaint.

**4. NATURE OF CASE:** This is a civil rights action filed by the plaintiff pursuant to Title 42 U.S.C. § 1983 and removed to the U.S. District Court by the defendants pursuant to Title

28 U.S.C. §§ 1441 and 1443.  The plaintiff claims that the defendants violated her federal constitutional rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments by falsely arresting her for speeding, driving under the influence of alcohol, and operating outside of her operator's license restrictions (eyeglasses required) on December 20, 2000, and using excessive force against her during the course of that arrest.

    5.  **STIPULATIONS OF FACT AND LAW:**

        a.  At all times relevant to this lawsuit, the defendants were acting in their official capacities as Connecticut State Police troopers, under color of state law.

    6.  **PLAINTIFF'S CONTENTIONS:**  This is a civil rights action filed by the plaintiff pursuant to Title 42 U.S.C. § 1983 and removed to the U.S. District Court by the defendants pursuant to Title 28 U.S.C. §§ 1441 and 1443.  The plaintiff claims that the defendants violated her federal constitutional rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments by falsely arresting her for speeding, driving under the influence of alcohol, and operating outside of her operator's license restrictions (eyeglasses required) on December 20, 2000, and using excessive force against her during the course of that arrest.

    7.  **DEFENDANT'S CONTENTIONS:**  The defendants claim that the plaintiff was lawfully arrested on the basis of probable cause, and that any force used during the course of her arrest was minimal and necessary under the totality of the circumstances with which they were confronted.  The defendants claim that their actions were not in violation of the plaintiff's constitutional rights, and that they are entitled to qualified immunity.

    8.  **LEGAL ISSUES:**

        a.  Whether there existed probable cause to support the arrest of the plaintiff?

b.  Whether the defendants used excessive force on the plaintiff during the course of her arrest?

c.  Whether the defendants are entitled to qualified immunity for their actions.

**9.  <u>VOIR DIRE QUESTIONS</u>:**  See Tab A attached to this memorandum.

**10.  <u>LIST OF WITNESSES</u>:**

a.  Joseph Marsh, 1111 Country Club Road, Middletown, Connecticut.  Trooper March is a defendant in this action.  He will testify as to his actions and observations during the course of his encounter with the plaintiff.

b.  Timothy Lehane, 1111 Country Club Road, Middletown, Connecticut. Trooper Lehane was dispatched to the scene of the plaintiff's arrest as backup to Trooper Marsh. He will testify as to his actions and observations while present.

c.  James Olson, 1111 Country Club Road, Middletown, Connecticut.  Trooper Olson  was present on the scene of the plaintiff's arrest during the time that she was performing her field sobriety tests.  He will testify as to his observations of the plaintiff.

d.  Gudrun Johnson, 1111 Country Club Road, Middletown, Connecticut. Trooper Johnson was not present during much of the incident involving the plaintiff.  She supervised the rendering of the plaintiff's urine sample, however, and will testify as to her actions and observations in this regard.

e.  Charlene Puska, 1111 Country Club Road, Middletown, Connecticut.  Ms. Puska is a Connecticut State Police statistician.  She will testify, if necessary, as to the racial profiling statistics required to be kept by Connecticut General Statutes for Trooper Marsh and for the Department of Public Safety as a whole for the years 2000 and 2001.

11. **EXHIBITS**:

    A.  Connecticut State Police Investigative Report #K00-401109

    B.  Certificate of Calibration (Speed Measuring Laser), Unit No. KL-05

    C.  Laser Operator Certificate for Trooper First Class Joseph Marsh

12. **DEPOSITION TESTIMONY:**  None anticipated.

13. **REQUESTS FOR JURY INSTRUCTIONS:**  See Tab B attached to this memorandum.

14. **ANTICIPATED EVIDENTIARY PROBLEMS:**  None anticipated.

15. **PROPOSED FINDINGS AND CONCLUSIONS:**  Not applicable to jury trials.

16. **TRIAL TIME:**  The defendants estimate that trial of this matter, exclusive of jury selection will require three days.

17. **FURTHER PROCEEDINGS:**  None anticipated.

18. **ELECTION FOR TRIAL BY MAGISTRATE:**  None made.

19. **OTHER MATTERS:**

    A. **PROPOSED JURY INTERROGATORIES:**  See Tab C attached to this memorandum.

    B. **PROPOSED OPENING STATEMENT:**  None requested.

DEFENDANTS
Joseph Marsh and Gudrun Johnson

RICHARD BLUMENTHAL
ATTORNEY GENERAL


By: _____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut  06105
Tel: (860) 808-5450
Federal Bar #ct05129
E-mail: stephen.sarnoski@po.state.ct.us


## **CERTIFICATION**

I hereby certify that the foregoing pre-trial memorandum was mailed, first-class, postage

pre-paid, to all counsel of record on this the _____ day of _____, _____, as follows:

A. Paul Spinella, Esq.
Spinella & Associates
One Lewis Street
Hartford, Connecticut 06103


_____
Stephen R. Sarnoski
Assistant Attorney General

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JOAN CALLUM,                          :          NO. 3:02CV-0057 (AHN)
    *Plaintiff,*                    :

    V.                                :

JOSEPH MARSH, *et al.*,               :
    *Defendants.*                   :          MARCH 3, 2004

## <u>PROPOSED VOIR DIRE</u>
## <u>QUESTIONS FOR THE JURY</u>

Counsel respectfully requests that the following questions be asked of prospective jurors:

1.  The plaintiff in this case is Joan Callum.  To the best of your knowledge, are you or any member of your family acquainted with the plaintiff in any way?

2.  The defendants in this case are Joseph Marsh and Gudrun Johnson.  Both defendants are employed as Connecticut State Police troopers by the State of Connecticut, Department of Public Safety, Division of State Police.  To the best of your knowledge, are you or any member of your family acquainted with them?

3.  The following individuals may be witnesses in this case:

    a.  Trooper Timothy Lehane

    b.  Trooper James Olson

    c.  Charlene Puska

To the best of your knowledge, are you or any member of your family acquainted with either of these individuals?

4.  To the best of your knowledge, have you, a member of your family or a close friend ever had an unpleasant experience with a police officer?  Have you ever been arrested for driving

under the influence of alcohol, or been required to undergo field sobriety tests by a police officer? If your response is affirmative, describe the experience.

5. Have you, a member of your family, or a friend ever been the subject of racial discrimination by a police officer? Do you believe that police officers in general discriminate against African Americans on the basis of their race?

6. Do any of you have an unfavorable opinion about police officers in general?

7. If your response to question 6 is affirmative, describe the nature of the unfavorable opinion that you hold concerning police officers.

8. Have you, a member of your family, or a close friend ever been arrested?

9. Have you read, heard or been exposed to unfavorable comments about the Connecticut State Police Department?

10. A portion of the testimony in this lawsuit will come from State Police officers or their supervisors. Have you or any member of your family ever had a personal experience, heard anything, or read anything which might make it difficult for you to believe their testimony?

11. Do any of you believe, for any reason, that police officers have a tendency to abuse their authority?

12. Have you or a member of your family ever been employed as a police officer?

13. Do any of you believe that the testimony of a policy officer is entitled to greater credibility than that of any other witness, merely by virtue of the fact that the testimony comes from a police officer?

14. Have you or a member of your family ever sued a police officer or the State of Connecticut for any reason?

15.  Have you or a member of your family ever been sued by the State of Connecticut or another governmental agency for any reason?

16.  Do you believe that, merely because the defendants have been accused of violating the plaintiff's constitutional rights, they are probably guilty of some wrongdoing?

17.  If you are selected to sit on this jury, the Court will instruct you on the law which you must apply to the facts of this case as you find them to be.  One of the Court's instructions will inform you that the burden of proof for all material facts rests with the plaintiff.  Do you understand that it is the plaintiff's responsibility to prove every fact essential to his case?

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOAN CALLUM, | : | NO. 3:02CV-0057 (AHN) |
| *Plaintiff,* | : | |
| | | |
| V. | : | |
| | | |
| JOSEPH MARSH, *et al.,* | : | |
| *Defendants.* | : | MARCH 3, 2004 |

**DEFENDANTS' PROPOSED INSTRUCTIONS**
**TO THE JURY**

The defendants hereby offer the following proposed instructions to the jury:

**I. Instructions on 42 U.S.C. § 1983**

**The Statute**

1.  The law to be applied in this case is the federal civil rights law which provides a remedy for individuals (or other entities) who have been deprived of their constitutional (or statutory) rights under color of state law.  Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Purpose of Statute**

2.  Section 1983 creates a form of liability in favor of persons who have been deprived of rights, privileges and immunities secured to them by the United States Constitution and federal statutes.  Before section 1983 was enacted in 1871, people so injured were not able to sue state officials or persons acting under color of state law for money damages in federal court.  In

enacting the statute, Congress intended to create a remedy as broad as the protection provided by the Fourteenth Amendment and federal laws.

Section 1983 was enacted to give people a federal remedy enforceable in federal court because it was feared that adequate protection of federal rights might not be available in state courts.

**Authority:** *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

### Burden of Proof

3.  I shall shortly instruct you on the elements of plaintiff's section 1983 claim, and on the elements of defendant's affirmative defenses.

The plaintiff has the burden of proving each and every element of his section 1983 claim by a preponderance of the evidence.  If you find that any one of the elements of plaintiff's section 1983 claim has not been proven by a preponderance of the evidence, you must return a verdict for the defendant.

The defendant has the burden of proving each element of his affirmative defenses.  I shall shortly instruct you on the elements of these defenses.  If you find that any one of the elements of defendant's defenses has not been proven by a preponderance of the evidence, you must disregard the defense.

**Authority:** *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

2

**<u>Elements of a Section 1983 Claim</u>**

4.  To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and

Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

*Authority: Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

**<u>First Element - Action Under Color of State Law</u>**

**<u>Definition</u>**

5.  The first element of the plaintiff's claim is that the defendant acted under color of state law. The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, ordinance, regulation, custom or usage, of any state (or territory or the District of Columbia). The term "state" encompasses any political subdivision of a state, such as a county or city, and also any state agencies or a county or city agency.

Action under color of state law means action that is made possible only because the actor is clothed with the authority of the state. Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law.

An actor may misuse power that he possesses by virtue of state law even if his acts violate state law; what is important is that the defendant was clothed with the authority of state law, and that the defendant's actions were made possible by virtue of state law.

*Authority: Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1361 (1941); *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1880).

6.  The act of a state official in pursuit of his personal aims that is not accomplished by virtue of his state authority is not action under color of state law merely because the individual happens to be a state officer.

*Authority: Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Stengel v. Belcher,* 522 F.2d 438 (6th Cir. 1975); *cert. denied,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed. 269 (1976).

### Second Element - Deprivation of Right
### False Arrest - Without a Warrant

7.  The second element of the plaintiffs' claims is that they were deprived of a federal right by the defendants.  The plaintiffs claim that their arrest by the defendants was unlawful and, as such, violated their rights under the Fourth Amendment to the U.S. Constitution as applied to the states through the Fourteenth Amendment to the U.S. Constitution.

There is no constitutional requirement that, as a prerequisite to a lawful arrest, an officer obtain a warrant.  Nor does the Constitution require a police officer to perform an error-free

investigation in support of every arrest that he/she makes.  The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted of an offense for which he/she was tried, and for every suspect who was arrested and later released.

The existence of probable cause is the sole criteria for a lawful arrest under the Fourth Amendment.  Probable cause exists where all of the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the person to be arrested committed an offense.  The quantum of evidence required to establish probable cause need not reach the level of evidence necessary to support a conviction.  However, the evidence supporting an officer's determination of probable cause must constitute more than rumor, suspicion, or even a strong reason to suspect a particular individual of having violated the law.

Any determination of whether probable cause to effect a particular arrest existed must be founded upon an analysis of the "totality-of-the-circumstances" surrounding the particular arrest in question.  In making a determination of whether probable cause existed, you must consider all of the facts available to the police at the time of the arrest and immediately before it.  Thus, the information upon which an officer may properly rely in determining whether probable cause to effect an arrest exists is not limited only to those facts of which the officer has personal knowledge.  A determination of probable cause may be based on hearsay information obtained from other police officers, or from a reliable third party, such as an anonymous informant whose information can be independently corroborated.  It is the collective knowledge of the law enforcement organization as a whole, and not merely the information possessed by the arresting

officer which must be considered in taking into account the totality-of-the-circumstances when considering whether a particular arrest was based upon probable cause.

     **Authority:** *United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 682, 83 L.Ed. 2d 604 (1985); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Baker v. McCollan,* 443 U.S. 137, 142-43, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); *Michigan v. Difillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *Dunaway v. New York,* 442 U.S. 200, 208 & n. 9, 99 S.Ct. 2248, 2254 & n. 9, 60 L.Ed.2d 824 (1979); *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975); *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963); *Henry v. United States,* 361 U.S. 98, 100-101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959); *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996); *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir. 1983); *United States ex rel. LaBelle v. LaVallee,* 517 F.2d 750, 753, (2d Cir. 1975); *Mulligan v. Rioux,* 229 Conn. 716, 743, 643 A.2d 1226 (1994).

<u>**No Duty to Continue Investigation**</u>
<u>**Once Probable Cause is Established**</u>

     8.  Once a police officer has probable cause to arrest, he has no continuing duty to go on and exhaust all possible avenues of investigation.  Because probable cause does not require the police to be certain that subsequent prosecution of the arrestee will be successful, it is of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation. The constitution does not require a police officer, possessed of probable cause, to explore and eliminate every theoretically plausible claim of innocence before making an arrest.

6

Police officers who have probable cause to arrest also have no affirmative duty to hear and consider conflicting versions of the alleged offense presented by the suspect. The fact that the person to be arrested, if he had been asked, might have denied the allegation of wrongdoing is of no significance to a police officer's formulation of probable cause. There is no requirement that an officer otherwise possessed of probable cause to arrest an individual must question and weigh the suspects' version of the incident prior to making the arrest. Although police officers must exercise judgment in assessing the existence or non-existence of probable cause in any given situation, they are not required to arbitrate the matter with the suspect.

*Authority: Baker v. McCollan,* 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979); *Krause v. Bennett,* 887 F.2d 362, 371 (2d Cir. 1989); *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 128 (2d Cir. 1997); *Franco-de Jerez v. Burgos,* 876 F.2d 1038, 1041 (1st Cir, 1989); *Dirienzo v. United States,* 690 F.Supp. 1149, 1157 (D.Conn. 1988); *McBride v. City of New Haven,* 2000 U.S. Dist. LEXIS 15964 (D.Conn. 2000).

### Objective Standard for Probable Cause

9. The existence or non-existence of probable cause is to be judged by using an objective standard. Therefore, an officer's subjective feelings toward a person to be arrested are irrelevant to the question of whether there existed probable cause to arrest that individual. An arrest is constitutionally valid if probable cause to arrest objectively existed at the time of the arrest, even if the officer may have subjectively believed that probable cause did not exist.

*Authority: Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Peters v. New York,* 392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904-05, 20 L.Ed.2d 917

(1968), *cited with favor in Florida v. Royer,* 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75

L.Ed.2d 229 (1983).

## Probable Cause - The Particular Offenses Charged

10.  In this case, the defendants charged the plaintiffs with speeding, driving under the

influence of alcohol or drugs, and operating a motor vehicle outside license restrictions..  If you

find that the defendants possessed probable cause to arrest the plaintiff for any of these offenses,

then you may not find that the defendants violated the plaintiff's constitutional rights.  With

regard to the particular offense charged, Connecticut law provides, in relevant part, as follows:

### § 14-219. Speeding

(a) No person shall operate any motor vehicle at a rate of speed greater than
sixty-five miles per hour upon any highway specified in subsection (b) of section
14-218a for which a speed limit has been established in accordance with the
provisions of said subsection.

### § 14-219c. Use of speed monitoring devices to support a conviction

A prima facie presumption of accuracy sufficient to support a conviction under
section 14-219 will be accorded to a radar, speed monitoring laser, vascar device
or any other speed monitoring device approved by the Commissioner of Public
Safety only upon testimony by a competent police officer that:  (1) The police
officer operating the radar, laser, vascar device or other device has adequate
training and experience in its operation;  (2) the radar, laser, vascar device or
other device was in proper working condition at the time of the arrest, established
by proof that suggested methods of testing the proper functioning of the device
were followed;  (3) the radar, laser, vascar device or other device was used in an
area where road conditions provide a minimum possibility of distortion;  (4) if
moving radar was used, the speed of the patrol car was verified;  and (5) the radar,
laser, vascar device or other device was expertly tested within a reasonable time
following the arrest, and such testing was done by means which do not rely on the
internal calibrations of such radar, laser, vascar device or other device.

### § 14-227a. Operation while under the influence of liquor or drug or while having an elevated blood alcohol content

(a) Operation while under the influence or while having an elevated blood alcohol content.   No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both.  A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state … (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content.   For the purposes of this section, "elevated blood alcohol content" means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight.

### § 14-36a. Classification of operators' licenses

(c) No person shall operate a motor vehicle in violation of the classification of the license issued to him.

### Sec. 14-36-4. Types of graduated licenses

(a) In accordance with the provisions of subsection (e) of Conn. Gen. Stat.§ 14-36, the Commissioner of Motor Vehicles may issue an operator's license with any limitation he deems advisable.  A license containing one or more such limitations shall be known as a graduated license.  In issuing a graduated license the commissioner shall consider the ability and competence of the licensee or applicant including any health problem or condition as well as the accident record and driving history of such licensee or applicant.  The commissioner shall also consider a recommendation by a physician who has examined such licensee or applicant, and any recommendation by the Medical Advisory Board established in accordance with Conn. Gen. Stat. § 14-46a et seq.

(b) A graduated license may contain one or more of the following limitations, which shall be noted on the license document:

(2) Operation of the motor vehicle is permitted only when the person is using corrective lenses, not including telescopic lenses, as prescribed by a licensed optometrist or ophthalmologist;

(g) A person having a graduated operator's license who operates a motor vehicle of a type or in a manner inconsistent with the limitations appearing on the license shall have committed an infraction under the provisions of subsection (g) of section 14-36 of the general statutes

**<u>Outcome of Charges – Dismissal</u>**

11.  One of the necessary elements that a plaintiff must prove in a civil rights action in which it is claimed that an arrest was made without probable cause is that the criminal charges were resolved in his favor.  Thus, a person who thinks that there is not even probable cause to believe he committed the crime(s) with which he is charged must prove that he pursued the criminal case to an acquittal or an unqualified dismissal, or else waive his § 1983 claim. The fact that the criminal charges against the plaintiff were resolved in his favor, however, does not end the inquiry concerning whether there existed probable cause to support the underlying arrest.  A judge or prosecutor may dismiss criminal charges for any reason or for no stated reason.  You should not speculate as to why the charges against the plaintiff were dismissed. Such a dismissal of the criminal charges against the plaintiff is not determinative of whether probable cause existed for his arrest.  Not every arrest on probable cause will result in a conviction, nor should it.  We expect police to react rapidly to complaints of a possible crime.  Indeed, that expectation is what underlies the doctrine of probable cause.  Police work is difficult enough without imposing unreasonable demands of perfection on every judgment officers are expected to make in ambiguous circumstances.

In determining whether probable cause existed to support the arrest, you must look only at the information in the possession of the arresting officer at the time of the arrest.  You must make an independent determination as to whether the information possessed by the defendants at the time of the plaintiff's arrest was sufficient to establish probable cause to support that arrest.

In order to satisfy the requirement for an "unqualified dismissal," it is sufficient if the plaintiff was discharged without a trial under circumstances amounting to an abandonment of the

prosecution without request or arrangement with him.  A criminal defendant has not obtained a favorable termination of a criminal proceeding where the outcome is inconsistent with the innocence of the accused.  A termination is not favorable, for example, where a prosecution ends because of a compromise with the accused.  Thus, where a plaintiff has negotiated with the prosecuting authority for the dismissal of charges against him, and has provided or agreed to provide some consideration in return, you may find that the charges in question were not pursued to an "unqualified dismissal," and that the plaintiff has failed to carry his burden of proof as to this element of his claim.

   *Authority:  Rogers v. City of Amsterdam,* 303 F.3d 155  (2d Cir. 2002); *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-117 (2d Cir. 1995); *Tomczak v. Town of Barnstable,* 901 F.Supp. 397, 403-04 (D.Mass. 1995); *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir. 1993); *Roesch v. Otarola,* 980 F.2d 850 853 (2d Cir. 1992); *Haynes v. City of New London,* 2002 U.S. Dist. LEXIS 10366 (D.Conn. 2002).

## Custodial Arrest

   12.  The standard of probable cause applies to all arrests, without the need to balance the interests and circumstances involved in particular situations.  A responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review.  If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.  Accordingly, a police officer possessed of probable

cause to believe an individual has committed an offense, however minor, is constitutionally authorized to make a custodial arrest without balancing costs and benefits or determining whether or not the individual's arrest was in some sense necessary.

**Authority:** *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *Dunaway* v. *New York*, 442 U.S. 200, 208, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979).

<u>**Second Element - Deprivation of Right**</u>
<u>**Excessive Force**</u>

13.  The second element of the plaintiff's claim is that she was deprived of a federal right by each of the defendants.  The plaintiff claims that the acts of the defendants in the course of arresting him constituted excessive force in violation of the Fourth Amendment to the U.S. Constitution as applied to the States through the Fourteenth Amendment.

Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Thus, police officers are justified in using reasonable physical force upon another person when and to the extent that they reasonably believe it necessary to effect an arrest or defend themselves or a third person from the use or imminent threat of use of physical force while effecting an arrest.  On the other hand, a person is not justified in using physical force to resist an arrest regardless of whether the arrest is legal or illegal.

Where an excessive force claim arises in the context of an arrest or investigative stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.  Determining whether the force used to effect a

particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the alleged intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application also requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying motivation.  An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

You must also keep in mind that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

13

*Authority: Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989);

*Miller v. Lovett,* 879 F.2d 1066 (2d Cir. 1989); *Esposito v. Buonome,* 647 F.Supp. 580 (D.Conn.

1986); Conn. Gen. Stat. § 53a-22(b); Conn. Gen. Stat. § 53a-23.

## Alternative Courses of Action

14.  As I have explained to you, police officers are justified in using reasonable physical

force upon another person when and to the extent that they reasonably believe it necessary to

effect an arrest or defend themselves or a third person from the use or imminent threat of use of

physical force while effecting an arrest.  In order to comply with this requirement, a police

officer is not required to consider and dismiss the possibility of using any other alternative type

or degree of force which may have been available to him at the time he was confronted with the

decision to use force in order apprehend the plaintiff. The Constitution merely requires that

whatever degree of force a police officer chooses to use be objectively reasonable under the

totality of the circumstances, not that the officer pursue the most prudent course of conduct as

judged by the perfect vision of 20/20 hindsight.

*Authority: Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989);

*Brewer v. City of Napa,* 210 F.3d 1093, 1095 (9th Cir. 2000); *Deering v. Reich,* 183 F.3d 645,

652-53 (7th Cir. 1999) (officers not required to use all feasible alternatives to avoid justifiable

use of deadly force); *Roy v. City of Lewiston,* 42 F.3d 691, 696 (1st Cir. 1994) (not clear that use

of mace or retreat would have been better solution in case in which use of deadly force justified);

*Schulz v. Long,* 44 F.3d 643, 649 (8th Cir. 1995) (Fourth Amendment only requires that the

officer's actions fall within a range of objective reasonableness); *Plakas v. Drinski,* 19 F.3d 1143,

1148 (7th Cir. 1994) (when deadly force otherwise justified, no obligation to use non-deadly

alternatives first); *O'Neal v. DeKalb County, Ga.,* 850 F.2d 653, 656 (11th Cir. 1988) (police not required to use minimum of force to apprehend violent, dangerous and threatening suspect); *Estate of Fortunato v. Handler,* 969 F. Supp. 963, 973 (W.D. Pa. 1996) (inquiry is not whether deadly force might have been avoided but rather whether its use was reasonable); *Yellowback v. City of Sioux Falls,* 600 S.W.2d 554, 557 (S.D. 1999) (the inquiry is not performed ... pursuant to a type of "Monday morning quarterback" approach in which analysis rests on whether the officers should have pursued alternative strategies or a lesser degree of force).

## Third Element:  Causation

### Proximate Cause - Generally

15.  The third element which plaintiff must prove is that each defendant's acts were a proximate cause of the injuries allegedly sustained by the plaintiff.  Proximate cause means that there must be a sufficient causal connection between the act or omission of each defendant and any injury or damage allegedly sustained by the plaintiff.  An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury; that is, if the injury or damage was a reasonably foreseeable consequence of each defendant's act or omission, it was proximately caused by such act or omission.  In other words, if a defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of each of the defendants.  If you find that any defendant has proved, by a preponderance of the evidence, that the plaintiff complains about an injury which would have occurred even in the absence of that

defendant's conduct, you must find that the defendant did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury, or the plaintiff's own actions, which intervenes or supersedes the defendant's act or omission and the plaintiff's injury and which produces a result which was not reasonably foreseeable by the defendant.

Here, you have heard testimony from the defendants that the plaintiff, refused to cooperate with them during the course of the investigation which preceded the plaintiff's arrest. You may, but are not required to, infer from this testimony that any injuries suffered by the plaintiff during the course of her arrest were caused not by any wrongful act on the part of the defendant police officers, but instead by her own misconduct. If you find that the plaintiff's injuries were caused by her own misconduct, and not by any excessive force on the part of the police officers, then you must enter your verdict for the defendants.

*Authority:* *Graham v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

**<u>Supervisory Officials</u>**

16.  If you find that the conduct of the subordinate denied the plaintiff a right guaranteed by federal law, you must consider whether the supervisor caused that conduct.  If the supervisor did cause the conduct, then he is liable under Section 1983 for the denial of the plaintiff's constitutional right.

The standard for assessing whether the supervisor proximately caused the plaintiff's constitutional injury are different from the standards for assessing the subordinate's liability.  If the subordinate denied the plaintiff a constitutional right, a supervisor is not liable for such a denial simply because of the supervisory relationship.

But there are circumstances under which you may find that the supervisor has caused a plaintiff's injury, and thus is liable for the illegal conduct of the subordinate.  Two such circumstances exist.  First, if you find that the supervisor has done something affirmative to cause the injury to the plaintiff - for example, by directing the subordinate to do the acts in question - you should find that the supervisor caused the injury.  Second, if you find that the supervisor failed to carry out his duty to oversee the subordinate, knowing that his failure to do so probably would cause a deprivation of the plaintiff's rights by the subordinate, you should find that the supervisor caused the injury.  A finding of either circumstance is enough to establish that the supervisor caused the injury.  I will explain each of these details.

To find that the supervisor did something affirmative to cause injury to the plaintiff, you must find by a preponderance of the evidence that the supervisor was personally involved in the conduct that caused the plaintiff's injury.  Personal involvement does not mean only that the defendant supervisor directly, with his own hands, deprived the plaintiff of his rights.  The law

17

recognizes that the supervisor can act through others, setting in motion a series of acts by

subordinates that the supervisor knows, or reasonably should know, would cause the

subordinates to inflict the constitutional injury. Thus, the plaintiff meets his burden of proof as to

the personal involvement of the supervisor in the subordinate's conduct if he proves by a

preponderance of the evidence that the deprivation of his right took place at the supervisor's

direction, or with the supervisor's knowledge, acquiescence or consent. The supervisor may give

his consent expressly or his consent may be implied because of his knowledge of or

acquiescence in the subordinate's unconstitutional conduct. However, in order to find for the

plaintiff with regard to the acts of a supervisor, you must find that the supervisor was personally

involved in the unconstitutional conduct sufficient to independently support their liability for the

wrongful acts. You may not base a finding of liability on the part of a supervisor merely upon

their linkage to the other defendants through the organizational chain of command.

*Authority:* Modern Federal Jury Instructions ¶ 87.03, Instruction 87-80; *Ayers v.*

*Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert.*

*denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed. 324 (1973), *reversed on other grounds, Graham v.*

*Connor,* 490 U.S. 386, 109 S.Ct. 1875, 104 L.Ed.2d 443 (1989); *McKinnon v. Patterson*, 568

F.2d 930 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

## II.   Instruction on Qualified Immunity

17. If, and only if, you find that the plaintiff's constitutional rights were violated, you

must next consider the defense of qualified immunity which is available to each of the

defendants. Qualified immunity is an affirmative defense. This means that the defendants, not

the plaintiff, bear the burden of proving the applicability of qualified immunity by a

preponderance of the evidence.  However, this shifting of the burden of proof from the plaintiff to the defendants applies *only* to the qualified immunity defense.

The shield of qualified immunity protects government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  The availability of the defense turns upon the objective legal reasonableness of the allegedly unlawful official action assessed in light of the legal rules that were clearly established at the time it was taken.  The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.  Under the doctrine of qualified immunity, a defendant will not be liable to the plaintiff if it was objectively reasonable for that defendant to believe that his acts would not violate the plaintiff's rights.  In a law enforcement context, the objective reasonableness test is met - and a defendant is entitled to qualified immunity - if police officers of reasonable competence could disagree on the legality of the defendant's actions.  Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law or those who act where the law clearly proscribed the actions taken.

In qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather with the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene.  The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular

governmental conduct.  It is sometimes difficult for an official to determine how the relevant legal doctrine will apply to the factual situation the official confronts.  If the official's mistake as to what the law requires is reasonable, however, the official is entitled to the qualified immunity defense.  Thus, the concern of the qualified immunity defense is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  A defendant is entitled to qualified immunity if you find that his actions were objectively reasonable under the totality of the circumstances as known to that defendant at the time he acted - even if you find that the defendant was mistaken as to the actual legal restraints that may have existed at the time he acted.

**Authority:**  *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed. 272 (2001); *Anderson v. Creighton,* 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998); *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997); *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); *Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993); *Roy v. Inhabitants of the City of Lewiston,* 42 F.3d 691, 695 (1st Cir. 1994).

### Qualified Immunity for False Arrest

18.  To receive qualified immunity protection when faced with a claim of false arrest, an officer need not have had actual probable cause, but only arguable probable cause.  Because only arguable probable cause is required, the inquiry is not whether probable cause actually existed,

but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.  Thus, even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity.

    *Authority:  Holmes v. Kucynda,* 321 F.3d 1069, 1079 (11th Cir. 2003), *citing Hunter v. Bryant,* 502 U.S. 224, 227, 116 L.Ed.2d 589, 112 S.Ct. 534 (1991).

## III.  Instructions on Damages

### Consider Damages Only if Necessary

    19.  If the plaintiff has proven by a preponderance of the credible evidence that defendant is liable on any of the plaintiff's claims, then you must determine the damages to which the plaintiff is entitled.  However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

    *Authority:  Eulo v. Deval Aerodynamics, Inc.,* 47 F.R.D. 35 (E.D. Pa. 1969) *modified on other grounds,* 430 F.2d 325 (3d Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); *Krieger v. Bausch,* 377 F.2d 398 (10th Cir. 1967).

### Multiple Claims - Multiple Defendants

    20.  I have two more cautionary instructions before I define the types of damages you may award, if you find that the plaintiff has proved liability according to the standards I have enumerated.

First, you should not award compensatory damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him one dollar compensatory damages on each claim - he is only entitled to be made whole again, not to recover more than he lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate him fully for all of the injuries.

With respect to punitive damages, you may make separate awards on each of the federal constitutional claims that is established.

Second, you must be careful to impose any damages that you may award on a claim solely upon the defendant or defendants who you find to be liable on that claim.  Although there are four (4) defendants in this case, it does not follow that if one is liable, all or any one of the others are liable as well.  Each defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other defendants.  If you find that only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

Nevertheless, you might find that more than one defendant is liable for a particular injury. If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find liable.  Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of ongoing damages.  If you decide that two or more (both) of the defendants are jointly liable on a particular claim, then you may simply determine the overall

22

amount of damages for which they are liable, without breaking that figure down into individual percentages.

## Nominal Damages

21.  If you return a verdict for the plaintiff on a claim, but find that the plaintiff has failed to prove by a preponderance of the evidence that she has suffered any actual damages on that claim, then you must return an award of damages in some nominal amount such as one dollar. Nominal damages must be awarded when the plaintiff has been deprived of a constitutional right by the defendant, but has suffered no actual damage as a natural consequence of that deprivation.

*Authority:*  Adapted from 5 Hon. Leonard B. Sand, *et al., Modern Jury Instructions,* Instruction 87-88 (September 1997); *Gibeau v. Nellis,* 18 F.3d 107 (2d Cir 1994).

## Compensatory Damages

22.  The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's rights.  If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages."  Compensatory damages seek to make the plaintiff whole - that is, to compensate him for the damage that he has suffered.  (If applicable: Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne.  A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of a defendant's conduct).

23

I remind you that you may award compensatory damages only for injuries that a plaintiff proved were proximately caused by a defendant's allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he is reasonably likely to suffer in the near future.  You may not award compensatory damages against the defendants for conduct you find to have been merely negligent.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Authority:**  *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S.Ct. 248,, 75 L.Ed. 544 (1931); *Kinty v. United Mine Workers of America,* 544 F.2d 706 (4th Cir. 1976), cert. denied 429 U.S. 1093 (1977); *Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir. 1962); *U.C. Castings Co. v. Knight,* 754 F.2d 1363 (7th Cir. 1985); *Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc.,* 600 F.2d 103 (7th Cir. 1979); Connecticut Law of Torts, 3d Ed. § 174; *Markey v. Santangelo,* 195 Conn. 76, 485 A.2d 1305 (1985).

24

## Mitigation of Damages

23.  In considering damages to award to the plaintiff, you must determine whether the plaintiff could have done something to lessen the harm that he suffered.  The burden is on the defendants to prove, by a preponderance of the evidence, that the plaintiff could have lessened the harm that was done to him, and that he failed to do so.  If the defendants convince you that the plaintiff could have reduced the harm done to him but failed to do so, the plaintiff is entitled only to damages sufficient to compensate him for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him.

*Authority:*  Adapted from 5 Hon. Leonard B. Sand,  *et al., Modern Jury Instructions,* Instructions 87-34 and 87-90 (September 1997).

## Punitive Damages

24.  If you award the plaintiff actual damages, then you may also make him a separate and additional award of exemplary or punitive damages.  You may also make an award of punitive damages even though you find that plaintiff has failed to establish actual damages. Punitive damages are awarded in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like him from committing such conduct in the future.

You may award the plaintiff punitive damages if you find that the acts or omissions of the defendant were done maliciously or wantonly.  An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person.  An act or failure to act is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the injured person.  The

plaintiff has the burden of proving, by a preponderance of the evidence, that defendant acted maliciously or wantonly with regard to the plaintiff's rights.

An intent to injure exists when the defendant has a conscious desire to violate federal laws of which he is aware, or when the defendant has a conscious desire to injure plaintiff in a manner he knows to be unlawful. A conscious desire to perform the physical acts that caused plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that defendant has a conscious desire to violate rights or injure plaintiff unlawfully.

If you find by a preponderance of the evidence that the defendant acted with malicious intent to violate plaintiff's federal rights or unlawfully injure him or if you find that defendant acted with a callous or reckless disregard of the plaintiff's rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

You may not award punitive damages against the defendants for conduct you find to have been merely negligent.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages standing alone are likely to deter or prevent this defendant

26

from again performing any wrongful acts he may have performed, or whether punitive damages are necessary to provide deterrence.  Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those defendant may have committed.

If you decide to award punitive damages, these same purposes should be considered by you in determining the appropriate sum of money to be awarded as punitive damages.  That is, in fixing the sum to be awarded, you should consider the degree to which defendant should be punished for his wrongful conduct, and the degree to which an award of one sum or another will deter a defendant or persons like him from committing wrongful acts in the future.

The extent to which a particular sum of money will adequately punish a defendant, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend upon the financial resources of the defendant against which damages are awarded.  Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the defendant in fixing the amount of such damages.

*Authority:*  *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Vasbinder v. Ambach,* 926 F.2d 1333 (2d Cir. 1991); *Abraham v. Pekarski,* 728 F.2d 167 (3d Cir. 1984); *Longoria v. Wilson,* 730 F.2d 300 (5th Cir. 1984); *Lee v. Southern Homes Sites Corp.,* 429 F.2d 290 (5th Cir. 1970); *Walker v. Norris,* 917 F.2d 1449 (6th Cir. 1990); *Bogan v. Stroud,* 958 F.2d 180 (7th Cir. 1992); *Crawford*

*v. Garnier,* 719 F.2d 1317 (7th Cir. 1983); *Cunningham v. City of Overland,* 804 F.2d 1069 (8th

Cir. 1986); *Wade v. Haynes,* 663 F.2d 778 (8th Cir. 1981), *aff'd sub nom., Smith v. Wade,* 461

U.S. 30 (1983); *Kennedy v. Los Angeles Police Department,* 901 F.2d 702 (9th Cir. 1990); *Green

v. Johnson,* 977 F.2d 1383 (10th Cir. 1992); *Jolivet v. Deland,* 966 F.2d 573 (10th Cir. 1992);

*Glover v. Alabama Dept. of Corrections,* 734 F.2d 691 (11th Cir. 1984); Connecticut Law of

Torts, 3d Ed., § 174; *Markey v. Santangelo,* 195 Conn. 76, 485 A.2d 1305 (1985).


## IV.  Special Verdict With Interrogatories

        25.  When you retire to the jury room to conduct your deliberations, I will ask you to

record your findings on a special verdict form which the clerk will provide for you.  The special

verdict form contains a number of interrogatories to which you are asked to respond either

"YES" or "NO."  You should carefully follow the instructions contained on the special verdict

form, and answer only those interrogatories which are necessary in order for you to conclude

your deliberations.  On the other hand, you should answer each and every one of the

interrogatories on the special verdict form except where the instructions indicate otherwise.

Your response to each interrogatory must be unanimous, and must reflect the conscientious

judgment of each juror.

        Should you need to reach the damages issue, the special verdict form also contains

appropriate spaces in which you are asked to record the amount of damages to be awarded.  As

with your answers to each of the questions contained on the form, your award of damages, if any,

must be unanimous and must reflect the conscientious judgment of each juror.

*Authority:*  Adapted from Modern Federal Jury Instructions § 78.01, Instruction No. 78-8 (1993).

## ADDITIONAL REQUESTS

The defendants respectfully request leave to supplement their request for jury instructions after the evidence and prior to the charging conference. This request is made in an abundance of caution and on the theory that the defendants cannot reasonably anticipate how the evidence will be presented and what instructions, in addition to the foregoing and accompanying legal issues, will be necessary to enable the jury to reach their verdict.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOAN CALLUM, | : | NO. 3:02CV-0057 (AHN) |
| *Plaintiff,* | : | |
| | | |
| V. | : | |
| | | |
| JOSEPH MARSH, *et al.,* | : | |
| *Defendants.* | : | MARCH 3, 2004 |

**DEFENDANTS' PROPOSED**
**SPECIAL VERDICT FORM**
**(Interrogatories)**

## I. LIABILITY

### A. False Arrest - Defendant Joseph Marsh:

1. Do you find that the plaintiff has proven by a preponderance of the evidence that the defendant, Joseph Marsh, unlawfully arrested her without probable cause?

        [ ] YES              [ ] NO

2. If you answered "yes" to interrogatory no. A.1, then do you find that the unlawful conduct on the part of the defendant, Joseph Marsh, was the proximate cause of injury to the plaintiff?

        [ ] YES              [ ] NO

3. If you answered "yes" to both interrogatories no. A-1 and A-2 above, do you find that, even though the defendant Joseph Marsh unlawfully arrested the plaintiff without probable cause, he is nonetheless entitled to qualified immunity for his actions?

        [ ] YES              [ ] NO

        (If you answered "yes" to both interrogatories A-1 and A-2, and "no" to interrogatory no. A-3, you may go on to consider damages against this defendant in Part II below.)

**B.  Excessive Force - Defendant Joseph Marsh:**

1.  Do you find that the defendant Joseph Marsh unlawfully used unreasonable force in violation of the plaintiff's federal constitutional rights in effecting her arrest?

[ ]  YES                    [ ]  NO

(If you answered "no" to this interrogatory, your deliberations are complete as to this defendant.  Please go on to Part C below.)

2.  If you answered "yes" to interrogatory no. B-1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to the plaintiff?

[ ]  YES                    [ ]  NO

(If you answered "no" to interrogatory no. B-2 above, your deliberations are complete as to this defendant.  Please go on to Part C below.)

3.  Do you find that, even though this defendant used unreasonable force in effecting the arrest of the plaintiff, he is nonetheless entitled to qualified immunity for his actions?

[ ]  YES                    [ ]  NO

(If you answered "yes" to interrogatory no. B-3 above, your deliberations are complete as to this defendant.  Please go on to Part C below.  If you answered "yes" to both interrogatories B-1 and B-2, and "no" to interrogatory no.  B-3, you may go on to consider damages against this defendant in Part II below.)

**C.  False Arrest - Defendant Gudrun Johnson:**

1.  Do you find that the plaintiff has proven by a preponderance of the evidence that the defendant, Gudrun Johnson, unlawfully arrested her without probable cause?

[ ]  YES                    [ ]  NO

2

2.  If you answered "yes" to interrogatory no. A.1, then do you find that the unlawful conduct on the part of the defendant, Gudrun Johnson, was the proximate cause of injury to the plaintiff?

[ ] YES                    [ ] NO

3.  If you answered "yes" to both interrogatories no. C-1 and C-2 above, do you find that, even though the defendant Gudrun Johnson unlawfully arrested the plaintiff without probable cause, she is nonetheless entitled to qualified immunity for her actions?

[ ] YES                    [ ] NO

(If you answered "yes" to both interrogatories C-1 and C-2, and "no" to interrogatory no. C-3, you may go on to consider damages against this defendant in Part II below.)

**D.  Excessive Force - Defendant Gudrun Johnson:**

1.  Do you find that the defendant Gudrun Johnson unlawfully used unreasonable force in violation of the plaintiff's federal constitutional rights in effecting her arrest?

[ ] YES                    [ ] NO

(If you answered "no" to this interrogatory, your deliberations are complete as to this defendant.  Please go on to Part II below.)

2.  If you answered "yes" to interrogatory no. D-1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to the plaintiff?

[ ] YES                    [ ] NO

(If you answered "no" to interrogatory no. D-2 above, your deliberations are complete. Please sign and date this form in the space provided below.)

3.  Do you find that, even though this defendant used unreasonable force in effecting the arrest of the plaintiff, she is nonetheless entitled to qualified immunity for her actions?

[ ] YES                    [ ] NO

3

(If you answered "yes" to interrogatory no. D-3 above, your deliberations are complete. Please sign and date the form in the space provided below. If you answered "yes" to both interrogatories D-1 and D-2, and "no" to interrogatory no. D-3, you may go on to consider damages against this defendant in Part II below.)

## II. **DAMAGES**

If you have found one or more of the defendants liable to the plaintiff, you may award damages against them.

1. Do you find that the plaintiff, Joan Callum, has proved actual damages suffered as the result of the defendants' wrongdoing?

[ ] YES                    [ ] NO

2. If you answered "yes" to interrogatory no. II.1, what amount of money in actual damages is fair and just to compensate the plaintiff for the injuries inflicted upon her by the defendants?

$ _____

3. If you answered "no" to interrogatory no. II.1, you have found that the plaintiff has proved that one or both of the defendants violated her constitutional rights, but that she failed to prove actual damages. You must, therefore award nominal damages in an amount not to exceed $10.00. Enter that amount below.

$ _____

4. If you awarded either actual or nominal damages to the plaintiff in interrogatories II.2 or II.3 above, and keeping in mind the Court's instruction on punitive damages, do you find that the defendants should be punished or deterred from future misconduct by an award of punitive damages in addition to that already listed above?

[ ] YES                    [ ] NO

4

5.  What amount of punitive damages is fair and just in order to punish each defendant, or to deter him/her from future misconduct?

As to defendant Joseph Marsh              $ _____

As to defendant Gudrun Johnson           $ _____


Your deliberations are complete.  Please sign and date this form.


_____              _____
Foreperson                                                    Date

5