**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOAN CALLUM, | : | NO. 3:02CV-0057 (AHN) |
| plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| TOWN OF COLCHESTER, et al., | : | |
| defendants. | : | OCTOBER 8, 2004 |

**MEMORANDUM OF LAW**
**IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Joan

Callum, against the defendants, Connecticut State Police Troopers Joseph Marsh and Gudrun

Johnson, and the Commissioner of Public Safety, Arthur Spada.  In her Revised Amended

Complaint dated September 29, 2004, the plaintiff alleges that Troopers Marsh and Johnson

falsely arrested, and used excessive force against, her during the course of her arrest on the

evening of December 20, 2000, in violation of her federal constitutional rights under the Fourth

Amendment.  In addition, the plaintiff alleges that the defendant Arthur Spada, in his position as

the Commissioner of Public Safety, failed to properly promulgate training guidelines and

regulations concerning arrest and use of force, failed to adequately screen, hire and retain

candidates for the position of state police trooper, failed to train troopers in the proper

performance of their duties, and failed or refused to take appropriate disciplinary action against

Troopers Marsh and Johnson as a result of their actions toward the plaintiff in violation of her

federal constitutional rights under the Fourth Amendment.  Finally, the plaintiff alleges that the

actions of all three defendants constituted the torts of malicious prosecution and abuse of process.

The Motion for Summary Judgment seeks judgment in favor of all of the defendants for the reasons stated therein, and as more fully explained in this memorandum of law.

<u>STANDARD OF REVIEW<br>ON SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A "material fact" is one whose resolution will affect the ultimate determination of the case.  *Id.*  In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact*." Samuels v. Smith,* 839 F.Supp. 959, 962 (D.Conn. 1993).

Despite the above, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2510; *see*

*also, Knight v. United States Fire Insurance Co.,*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.,* 854 F.2d 1179

(9th Cir. 1988); *Edward B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720 (S.D.N.Y.

1941).

## ARGUMENT

**I.**  **THE DEFENDANTS DID NOT FALSELY ARREST THE PLAINTIFF BECAUSE PROBABLE CAUSE EXISTED TO SUPPORT HER APPREHENSION FOR THE CHARGES FILED AGAINST HER.**

The existence of probable cause is the sole criteria for a lawful arrest under the Fourth

Amendment.  *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975);

*Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Fields v. City of South*

*Houston, Texas*, 922 F.2d 1183, 1189 (5th Cir. 1991).  The validity of a warrantless arrest and,

thus, the existence or non-existence of probable cause, is a matter determined by the court

according to state law.  *See Doe v. Bridgeport Police Dep't,* 198 F.R.D. 325, 335-36 (D. Conn.

2001) (applying Connecticut law); *United States v. Fisher,* 702 F.2d 372, 375, n.6 (2d Cir.

1983).  Probable cause has been defined to mean "facts and circumstances within the officer's

knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that the suspect has committed . . . an offense." *Michigan*

*v. Defilippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *United States v.*

*Fisher*, 702 F.2d 373, 375 (2d Cir. 1973); *Butts v. Carey*, 706 F.Supp. 158, 162 (D.Conn. 1988).

The plaintiff bears the burden to demonstrate that there is no reasonable basis for instituting the

criminal proceedings.  *Zenik v. O'Brien*, 137 Conn. 592, 597, 79 A.2d 769 (1951).  Further,

although probable cause is defined in terms of "reasonableness", it is an issue of law for the court

to decide.  *McMahon v. Florio*, 147 Conn. 704, 707, 166 A.2d 204 (1960); *Paranto v. Ball*, 132

Conn. 568, 571, 46 A.2d 6 (1946) (citations omitted).  Accordingly, the issue is appropriately

decided by way of a motion for summary judgment.

Any determination of whether probable cause to effect a particular arrest existed must be

founded upon an analysis of the "totality-of-the-circumstances" surrounding the particular

intrusion in question.  *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527

(1983).  The experience of a police officer is a factor to be considered in the determination of

probable cause.  *See United States v. Cortez*, 449 U.S.  411, 418, 101 S.Ct. , 690, 696, 66

L.Ed.2d 621 (1981).  The information upon which an officer may properly rely in determining

whether probable cause to effect a warrantless arrest exists is not limited only to those facts of

which he has personal knowledge.  A determination of probable cause may be based on hearsay

information from a reliable source or information from an anonymous informant that can be

independently corroborated.  *See, e.g., Draper v. U.S*., 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3

L.Ed.2d 327 (1959) (a tip from a known informant of proven reliability may form the basis for

probable cause, especially when police independently corroborate innocent details of the tip);

*Jones v. U.S.,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960) (when making a

warrantless arrest, an officer may rely upon information received through an informant, rather

than upon his direct observations, so long as the informant's statement is reasonably

corroborated).  Thus, probable cause exists as long as the probable "veracity" and "basis of

knowledge" of persons supplying hearsay information and the results of independent police

investigation make it reasonably likely, based on the totality of the circumstances, that the

information is correct.  *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.  *See also, U.S. v.

Smith*, 9 F.3d 1007, 1013-14, (2d Cir. 1993) (probable cause for warrant to search defendant's

apartment existed when officer dispatched informant to the apartment building to purchase cocaine and witnessed informant emerging with cocaine).  Finally, when testing the quantum of evidence supporting probable cause, it is not the personal knowledge of the arresting officer, but the "collective knowledge of the law enforcement organization" at the time of the arrest which must be considered. *United States ex rel. LaBelle v. LaVallee*, 517 F.2d 750, 753 (2d Cir. 1975); *Mulligan v. Rioux*, 229 Conn. 716, 743, 643 A.2d 1226 (1994).

If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate.  *Franco-de Jerez v. Burgos,* 876 F.2d 1038, 1041 (1st  Cir, 1989).  Thus, the fact that the person to be arrested, if asked, would deny the allegation of wrongdoing is of no significance to the defendants' formulation of probable cause.

> . . . [There is no requirement] that an officer otherwise equipped with probable cause to arrest an individual has a duty to question and weigh the  suspect's version of the incident prior to making the arrest . . . .  Although police officers must exercise judgment in assessing the existence or non-existence of probable cause in a given situation, they are not required to arbitrate the matter with the suspect.

*Baker v. McCollan,*  443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979); *Ricciuti v. N.Y.C. Transit Authority,*  124 F.3d 123, 128 (2d Cir. 1997); *Edwards v. Kittrell*, Civil No. N-87-108 (TFGD), *Ruling on Defendant's Motion for Summary Judgment*, filed July 1, 1988, Slip Op. at 4.  Nor is the arresting officer's subjective feelings about the arrest relevant to the issue of whether the contested arrest was supported by probable cause.  An arrest is valid if probable cause to arrest objectively existed, even if the officer subjectively believed that probable cause did not exist, and even if the arresting officer harbored personal ill feelings toward the person arrested.  *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872,

104 L.Ed.2d 443 (1989); *Peters v. New York*, 392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904-05, 20

L.Ed.2d 917 (1968), *cited with favor in Florida v. Royer*, 460 U.S. 491, 507, 103 S.Ct. 1319,

1329, 75 L.Ed.2d 229 (1983).  Moreover, probable cause to arrest for *any* offense - even one

with which the plaintiff was not ultimately charged - is sufficient to overcome the charge of false

arrest or imprisonment.  *See, e.g., Avery v. King,* 110 F.3d 12 (6th Cir. 1997); *Biddle v. Martin,*

992 F.2d 673 (7th Cir. 1993); *Pfannstiel v. City of Marion,* 918 F.2d 1178 (5th Cir. 1990).

 Here, the plaintiff was charged with three offenses; to wit, operating a motor vehicle

under the influence of alcohol or drugs, speeding, and operating a motor vehicle outside of her

license restrictions (corrective lenses required).  As stated above, if probable cause existed to

support her arrest for any one of the charges, then no violation of the plaintiff's Fourth

Amendment rights based upon a claim of unlawful seizure can be made.

 It is clear from the police report that the plaintiff was clocked via use of a laser speed

detecting device by Trooper Marsh while traveling at a speed of 78 mph in a posted 65 mph zone

on Route 2 in the Town of Colchester, Connecticut.  While the plaintiff insists that she pays

attention to the speed limit, she is unable to state precisely how fast she was going when she

passed Trooper Marsh's position on the highway.  *See* Deposition Transcript of Joan Callum, pp.

34-36.  Under these circumstances, the trooper's representations as to what he observed,

contained in his police report, are sufficient in and of themselves to establish probable cause to

believe that the plaintiff was speeding.

 As for the plaintiff's operator's license restrictions, it is similarly clear that her driver's

license required her to wear corrective lenses for her eyes while operating a motor vehicle.  Joan

Callum stated in her deposition that she does not adhere to this restriction.  Trooper Johnson

noted that the plaintiff did not comply with the restrictions on her driver's license, and made sure that Trooper Marsh was aware of this violation. As such, probable cause also existed to charge Joan Callum with this offense.

Finally, probable cause also existed to believe that the plaintiff was operating her vehicle under the influence of alcohol or drugs. Even if we rely solely on the admissions of the plaintiff, and the uncontroverted statements of the defendants, we know that (1) the plaintiff was speeding, (2) she did not immediately stop her car when signaled to do so by Trooper Marsh, (3) her eyes were glassy, (4) she was coming from the Foxwoods Casino late at night, (5) she did not complete the horizontal gaze nystagmus test, (6) she appeared wobbly in the driver's seat of her vehicle when being interviewed by Trooper Marsh, (7) it took her five minutes to locate her driver's license and registration when asked to do so, and (8) she was unable to successfully count backwards from 2,000 when asked to do so. Even if we also accept the plaintiff's statements that (1) she had not been drinking, and (2) that she passed several other field sobriety tests administered by Trooper Marsh, and add the fact that, according to Trooper Marsh himself, her breath did not smell of alcohol, sufficient uncontroverted facts remain upon which a reasonable police officer could have concluded that the plaintiff was operating a motor vehicle under the influence of drugs. Indeed, it was precisely this conclusion which led Trooper Marsh to require the plaintiff to submit urine samples while being processed at the Colchester State Police Barracks.

The fact that Trooper Marsh was ultimately proved to have been mistaken in his judgment as to the reason for the plaintiff's aberrant conduct, does not dispel the fact that probable cause nonetheless existed upon which to make the arrest. At the very least, reasonable

8

officers could differ as to whether probable cause existed to arrest the plaintiff for this offense. Accordingly, whether on the merits or on the basis of qualified immunity, judgment in favor of the defendants on the question of false arrest is appropriate.

To the extent that the plaintiff complains that it was unreasonable to take her into custody given the minor nature of the offenses with which she was charged, the U.S. Supreme Court has precluded such a Fourth Amendment claim by virtue of its holding in *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). There, the Court held simply that, if an officer has probable cause to believe an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender. *Id.,* 532 U.S. at 354. This holding of the U.S. Supreme Court is dispositive of the plaintiff's § 1983 claim for false arrest.

One final issue deserves mention. Nowhere in the submissions in support of the motion for summary judgment does it mention that Trooper Johnson had anything to do with the arrest of the plaintiff. As made clear from the affidavit of Trooper Johnson and the deposition transcript of Joan Callum, the sum total of Trooper Johnson's involvement in this incident was to obtain the required urine samples from the plaintiff at the Colchester State Police Barracks following her arrest. Trooper Johnson was entitled to rely on her fellow trooper's determination that the arrest was lawful. *See Loria v. Gorman,* 306 F.3d 1271, 1288 (2d Cir. 2002). Accordingly, she was entitled to proceed with her part in processing the prisoner without regard for the ultimate legality of the underlying arrest. As such, Trooper Johnson cannot be held liable for false arrest and, if for no other reason, summary judgment should be issued in her favor on the false arrest claim.

II.    **THE DEFENDANTS DID NOT USE EXCESSIVE FORCE ON THE PLAINTIFF DURING THE COURSE OF HER ARREST.**

The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest. *See Graham v. Connor,* 490 U.S. 386, 388, 391-95, 104 L.Ed.2d 443, 109 S.Ct. 1865 (1989). In this context, the reasonableness question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397. As to the substance of such a claim, "'not every push or shove'" is excessive. *Id.* at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033 (1973)). To establish a claim of excessive force**,** "a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards." *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir. 1990).

The standard, as established by *Graham,* is one of objective reasonableness under the totality of the circumstances. *See Graham,* 490 U.S. at 396; *see also Soares v. State of Conn.,* 8 F.3d 917, 921 (2d Cir. 1993). Proper application of the standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396-97. An officer's good intentions [will not] make an objectively unreasonable use of force constitutional. *Id.* Finally, if the force used was unreasonable or excessive, the plaintiff may recover damages "even if the injuries inflicted were not permanent or severe." *Robinson v. Via,* 821 F.2d 913, 924 (2d Cir. 1987).

Here, the defendants are entitled to summary judgment on the excessive force claim. The plaintiff makes two allegations that, arguably, might be considered an application of excessive force. First, she claims that Trooper Marsh shoved her as he was placing her in a detention cell during the course of her processing at the Colchester State Police Barracks. The plaintiff admits that she stumbled but did not fall when she was shoved, and claims no pain or injury of any sort as a result of that incident. Second, the plaintiff claims that Trooper Marsh "yanked" her hat from her head while searching her following her arrest. This event does not constitutes a use of force within the meaning of the Forth Amendment. Nonetheless, again, the plaintiff claims no pain or injury as a result of this incident.

As argued above, Trooper Johnson was not present during either of these events. Consequently, she had no knowledge of or participation in either event and cannot be held liable for excessive force. A similar result is compelled with regard to Trooper Marsh. While we know very little of the full context in which each of the events allegedly occurred, it is clear that neither the shove nor the yank resulted in any pain or injury to the plaintiff. Given this lack of injury, it is difficult, if not impossible, to envision just how Trooper Marsh could have understood that his actions were unconstitutional. As such, he is, at the very least, entitled to qualified immunity for his actions.[1] While the plaintiff understandably describes her entire arrest

---

[1]    In *Saucier v. Katz,* 533 U.S. 194, 201-02, 205, 150 L.Ed.2d 272, 121 S.Ct. 2151 (2001), the Supreme Court made clear that in excessive force cases, claims of qualified immunity should be evaluated in the following manner. The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. *Id.* at 201; *Hope v. Pelzer,* 536 U.S. 730, 736, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002). The inquiry is whether the alleged use of excessive force was objectively reasonable. *See Graham v. Connor,* 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989); *Salim v. Proulx,* 93 F.3d 86, 91 (2nd Cir. 1996). Thus, claims that an officer made a reasonable mistake of fact that justified the use of force are considered at this stage of the analysis. *Stephenson v. Doe,* 332 F.3d 68, 78 (2d Cir. 2003). If the plaintiff fails to establish a constitutional violation, the

(continued on next page)

as humiliating and upsetting, it appears that the whole experience was no more harmful to

privacy or physical interests than the normal custodial arrest.  *See Atwater v. City of Lago Vista,*

*supra,* 532 U.S. at 355 (citations and quotations omitted).  As in the *Atwater* case, "the arrest and

booking were inconvenient and embarrassing to [Callum], but not so extraordinary as to violate

the Fourth Amendment."  *Id.*  Accordingly, Trooper Marsh is also entitled to summary judgment

on the excessive force claim.

### III.     COMMSSIONER SPADA IS NOT LIABLE TO THE PLAINTIFF FOR VIOLATION OF HER FOURTH AMENDMENT RIGHTS.

It is well settled that supervisory officials such as the defendant, Arthur Spada,

Commissioner of Public Safety, may not be held liable in a § 1983 action for the misdeeds of

their subordinates merely upon the basis of *respondeat superior.  Monell v. Department of Social*

*Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Rather, the plaintiff must

proffer evidence that at least suggests a pattern of misconduct from which it may be inferred that

decision makers are approving or at least acquiescing in the alleged misconduct.  *Walker v. City*

*of New York,* 974 F.2d 293, 300 (2d Cir. 1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122

---

(continued from previous page)

qualified immunity inquiry ends and the plaintiff may not recover.  *Saucier,* 533 U.S. at 201.  If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation.  *Id.*  This inquiry focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  Resolution of this inquiry is purely legal in that it depends upon whether the law put the officer on notice that his conduct would be clearly unlawful.  *Id.; Stephenson v. Doe,* 332 F.3d 68, 80-81 (2nd Cir. 2003) ("We have said that the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is 'a question of law better left for the court to decide.'") (quoting *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir. 1990)).  This inquiry adds a "further dimension" to the qualified immunity analysis by acknowledging that "reasonable mistakes can be made as to the legal constraints on particular police conduct."  *Saucier,* 533 U.S. at 205.  And it ensures that "all but the plainly incompetent or those who knowingly violate the law" are protected from suit.  *Malley v. Briggs,* 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).

L.Ed.2d 762 (1993).  Additionally, the proof must demonstrate that each supervisory defendant had some personal responsibility for the alleged constitutional deprivation in order for that defendant to be held liable to the plaintiff for damages.  *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir. 1991); *see also, Marsden v. Federal Bureau of Prisons*, 856 F.Supp. 832, 835 (S.D.N.Y. 1994) (citations omitted) (A defendant must personally have knowledge of or acquiesce or participate in the deprivation of the plaintiff's constitutional rights).  Finally, a causal nexus between the supervisor's conduct and the injuries alleged must be demonstrated. *Lewis v. Meloni,* 949 F.Supp. 158, 163 (W.D.N.Y. 1996).

        The courts have articulated four circumstances in which a supervisory defendant may be held liable for the unconstitutional acts of his/her subordinates.  The plaintiff may allege and establish that; (1) a supervisory defendant responsible for establishing final policy with respect to the matter in question, promulgated or officially adopted a formal policy which caused the violation of the plaintiff's federal constitutional rights; (2) such an official was personally responsible for a specific action or decision which caused the violation of the plaintiff's federal constitutional rights; (3) there existed an unlawful practice by subordinate officials so permanent and well settled as to constitute a "custom or usage," along with proof that this practice was so manifest or widespread as to imply the constructive acquiescence of the policy-making officials; or (4) the supervisory defendants failed to train or supervise their subordinate employees in a manner designed to prevent the violation of the plaintiff's federal constitutional rights, if such failure amounts to "deliberate indifference" to the rights of those with whom the defendants will come into contact during the course of their professional duties.  *See, e.g., Monell v. Department of Social Services, supra,* 436 U.S. at 690; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84,

106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 871 (2d Cir. 1992); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996). Proof of a single incident of unconstitutional activity is not sufficient upon which to impose liability upon a supervisor not directly involved in such an incident under *Monell* unless "proof of the incident includes proof that it was caused by an existing, unconstitutional [government] policy." *Oklahoma City v. Tuttle,* 471 U.S. 808, 834-24, 85 L.Ed.2d 791, 105 S.Ct. 2427 (1985).

Regardless of the theory upon which a plaintiff intends to proceed, he must first allege and demonstrate the violation of an underlying constitutional right on the part of either the supervisory official or his subordinate. Recovery under § 1983 is not authorized on a theory of supervisory liability when, in fact, there has been inflicted no underlying constitutional harm. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). Moreover, in order to survive summary judgment, the plaintiff must offer more than a conclusory assertion that the supervisory defendant failed to train his subordinate, or created an unlawful custom or promulgated an unlawful policy resulting in a violation of the plaintiff's constitutional rights. *See, e.g., Neighbour v. Covert,* 68 F.3d 1508, 1512 (2d Cir. 1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996); *Dwares v. City of New York,* 985 F.2d 94,100 (2d Cir. 1993).

Here, the plaintiff has done no discovery to support her allegations against Commissioner Spada. The affidavit of the Commissioner establishes that he had absolutely no knowledge of the incident which is the subject of this lawsuit until the complaint was filed. The affidavit further establishes that the State Police training program is not simply adequate in a

constitutional sense, but exceptional within the profession.  It meets the national standards set

forth by the Commission on Accreditation for Law Enforcement Agencies (CALEA), and it

meets or exceeds state Police Officer Standards and Training Council (POSTC) standards

promulgated for municipal police officers in the State of Connecticut.[2]  The plaintiff has offered

no evidence, expert or otherwise, to indicate that the training of Troopers Marsh and Johnson

was deficient in any concrete way, that there exists any policy to tolerate inadequate training or

performance on the part of State Police troopers, or that such conditions, if indeed they exist at

all, were ever made known to Commissioner Spada.  Lacking any evidentiary substance to

support the accusation of supervisory liability on the part of Commissioner Spada, counsel's

persistent refusal to withdraw such claims against this defendant is sanctionable.

     As argued above, a general, conclusory allegation of wrongdoing based merely upon a

single proffered incident of wrongdoing is insufficient upon which to base a claim of supervisory

liability.  While a supervisory defendant may be held liable if he had notice of but repeatedly

failed to make any meaningful investigation into charges that a police officer had used excessive

force in violation of a complainant's civil rights, *see, e.g.,  City of Canton v. Harris,* 489 U.S.

378, 388-92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Fiacco v. City of Rensselaer,* 783 F.2d

319, 326 (2d Cir. 1986), no such claim is borne out by the facts in the instant lawsuit.

Accordingly the plaintiff's claim for supervisory liability against Commissioner Spada under the

Fourth Amendment must fail.

---

[2]  Indeed, the mere fact that the Connecticut State Police training program meets or exceeds both state and national
standards in respect of the use of force strongly militates, if not requires, a finding of qualified immunity on behalf
of Commissioner Spada for his reliance upon the adequacy of the training.

IV.   **THE STATE POLICE DEFENDANTS ARE ENTITLED TO BOTH SOVEREIGN AND STATUTORY IMMUNITY FROM LIABILITY FOR THE STATE CONSTITUTIONAL AND COMMON LAW CLAIMS.**

Plaintiff asserts several pendent claims against the state defendants, including malicious prosecution and abuse of process in violation of Connecticut common law.  The state defendants are entitled to dismissal of these claims under the common law doctrine of sovereign immunity and the statutory immunity provided by Connecticut General Statutes § 4-165.[3]

In applying supplemental jurisdiction over pendent state law claims, federal courts must apply state substantive law.  *See, e.g., Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991), *cert. denied,* 502 U.S. 1060, 117 L.Ed.2d 110, 112 S.Ct. 939 (1992).  Thus, "a state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim."  *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 884 (2d Cir. 1995).

A.  **Sovereign Immunity.**

In the instant lawsuit, the plaintiff appears to direct his allegations of wrongdoing only at the defendants in their individual capacities.  *See* Second Amended Complaint, ¶¶ 1-5.  This self-serving representation on the part of the plaintiff is, however, not dispositive of the matter under state law.  In *Miller v. Egan,* 265 Conn. 301, 828 A.2d 549 (2003)*,* the Connecticut Supreme Court recently examined the question of whether a pleading could reasonably be construed to sue

---

[3] General Statutes § 4-165 provides, in relevant part, as follows:

**Immunity of state officers and employees from personal liability.** No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment.

a series of state defendants in their official capacities despite a claim on the part of the plaintiff

that the suit was meant only to sue the defendants in their individual capacities.  Recognizing

that, under state jurisprudence, the construction of a pleading was a question of law, over which

it exercised plenary review, the Supreme Court applied the test set forth in *Spring v. Constantino,*

168 Conn. 563, 568, 362 A.2d 871 (9175), to determine in what capacity the defendants had

been sued.  The Court concluded that, based upon the nature of the allegations in the complaint,

the plaintiff had sued the defendants in their official capacities, and that, as such, they were

entitled to sovereign immunity from suit.

In examining the allegations of the complaint, the Court first observed that "the fact that

the state is not named as a defendant does not conclusively establish that the action is not within

the principle which prohibits actions against the sovereign without its consent …." *Miller*, 265

Conn. at 308, *citing Spring v. Constantino, supra,* at 568.  Rather, the Court observed, "the vital

test is to be found in the essential nature and effect of the proceeding." *Id.*  It then set forth four

criteria to determine whether an action is "in effect, one against the state [which] cannot be

maintained without its consent:  (1) a state official has been sued; (2) the suit concerns some

matter in which that official represents the state; (3) the state is the real party against whom relief

is sought; and (4) the judgment, though nominally against the official, will operate to control the

activities of the state or subject it to liability." *Id.*

The *Miller* court then went on to reiterate long-standing common law principles

surrounding the application of the doctrine of sovereign immunity:

> We have long recognized the validity of the common-law principle
> that the state cannot be sued without its consent …. *Horton v.*
> *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977).  We have also
> recognized that *because the state can act only through its officers*

*and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. Fetterman v. University of Connecticut,* 192 Conn. 539, 550-51, 473 A.2d 1176 (1984) ….

We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; M*artinez v. Department of Public Safety,* 263 Conn. 74, 85-86, ___ A.2d ___ (2003)]; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. *Horton v. Meskill, supra,* 172 Conn. 624 ….

Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. *Pamela B. v. Ment,* 244 Conn. 296, 328, 709 A.2d 1089 (1998). Because a court may tailor declaratory and injunctive relief so as to minimize any such interference, and in order to afford an opportunity for voluntary compliance with the judgment, actions that seek injunctive or declaratory relief against a state officer acting in excess of statutory authority or pursuant to an unconstitutional statute do not conflict with the policies underlying the doctrine of sovereign immunity. *Doe v. Heintz,* 204 Conn. 17, 32, 526 A.2d 1318 (1987) ….

This exception does not apply, however, to claims against the state for monetary damages. *See Krozser v. New Haven,* 212 Conn. 415, 423, 562 A.2d 1080 (1989) (plaintiff seeking money damages against state, alleging that defendant's actions violated his constitutional rights, required to seek waiver of immunity from claims commissioner before bringing action in court); *cert. denied,* 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990); *Barde v. Board of Trustees,* 207 Conn. 59, 60-61, 539 A.2d 1000 (1988) (treating plaintiff's claims for injunctive relief and money damages separately; as to money damages, plaintiff required to exhaust administrative remedies by proceeding through claims commissioner; as to injunctive relief, plaintiff's claims of constitutional violations not sufficiently established); *Doe v. Heintz, supra,* 204 Conn. 36-37 (sovereign immunity barred

> plaintiff's claims for attorney's fees and costs, despite plaintiff's
> allegations that state officer was acting pursuant to an
> unconstitutional statute); *Fetterman v. University of Connecticut,
> supra,* 192 Conn. 553, (treating claims for monetary damages and
> declaratory relief separately and concluding that counts
> "requesting relief by way of damages" were barred by doctrine of
> sovereign immunity).

*Miller, supra,* 265 Conn. at 313-16. (internal quotations omitted) (emphasis supplied).

Here, it is clear from the allegations contained within the Second Amended Complaint that the State Police defendants, are being sued over matters involving the performance of their official duties on behalf of the State of Connecticut. The first two prongs of the test set froth in *Spring v. Constantino, supra,* are therefore, satisfied. In addition, because "a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state," *Miller, supra,* the third prong of the *Miller* test is satisfied. Finally, if a judgment is entered against the State Police defendants, Connecticut General Statutes §§ 29-8a and 5-141d require that the State of Connecticut indemnify its officers and employees for any monetary damages adjudged.[4] In addition, since the plaintiff claims that her rights were violated because

---

[4]   Connecticut General Statutes § 29-8a provides, in pertinent part, as follows:

> (a) The state shall protect and save harmless any state policeman from financial loss and expense,
> including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason
> of the alleged deprivation by such state policeman of any person's civil rights, which deprivation
> was not wanton, reckless or malicious, provided such state policeman, at the time of the acts
> resulting in such alleged deprivation, was acting in the discharge of his duties or within the scope
> of his employment or under the direction of a superior officer.

 Connecticut General Statutes § 5-141d provides, in pertinent part, as follows:

> (a) The state shall save harmless and indemnify any state officer or employee, as
> defined in section 4-141, and any member of the Public Defender Services
> Commission from financial loss and expense arising out of any claim, demand,
> suit or judgment by reason of his alleged negligence or alleged deprivation of any

(continued on next page)

of an unconstitutional policy maintained by the State Police, or by the Commissioner's failure to properly train or select his subordinates, the inevitable change in policy which would follow a judgment against the defendants in this lawsuit would certainly operate to "control the activities of the state or subject it to liability." Accordingly, the fourth and last prong of the relevant test is also satisfied. Having met each of the prongs of the applicable test, the supplementary state law claims must be found to have been filed against the State Police defendants in their official capacities (that is, against the "state"), regardless of the plaintiff's representations to the contrary.

Connecticut law recognizes only two situations in which it is unnecessary for a plaintiff to first seek and obtain permission to sue the state from the claims commissioner before filing suit in court. A plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. *Miller, supra,* at 316-17. The burden is on the plaintiff to "show" that his complaint fits within one or both of the enumerated exceptions. *Id.,* at 314. Here, however, the Connecticut legislature has not waived, either explicitly or by force of necessary implication, the state's sovereign immunity. Moreover, it is clear from the Revised Amended Complaint that the plaintiffs do not seek declaratory or injunctive relief, but rather

_____

(continued from previous page)

person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

seek monetary damages for their perceived injuries.  Nor do they claim that the defendants acted in excess of their statutory authority or pursuant to an unconstitutional statute.  As such, the claims against the State Police defendants are properly construed under Connecticut law as having been filed against them in their official capacities -- that is, against the state -- and are barred by the doctrine of sovereign immunity.

**B.  <u>Statutory Immunity</u>.**

Having determined that the plaintiff's pendent state law claims against the defendants are barred by the doctrine of sovereign immunity, it is unnecessary to examine whether the claims brought against them are likewise barred by the statutory immunity created by Connecticut General Statutes § 4-165.  *See Shay v. Rossi*, 253 Conn. 134, 180-81, 749 A.2d 1147 (2000), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325.  However, even assuming *arguendo* that the state law claims were not barred by the doctrine of sovereign immunity, they would nonetheless be barred under § 4-165.

The outcome of the statutory immunity argument is controlled by the decision of the Connecticut Supreme Court in the case of *Martin v. Brady,* 261 Conn. 372, 802 A.2d 814 (2002).  In *Martin,* the plaintiff alleged that defendant state police officers conducted an improper search of his home and seizure of his person in violation of his rights under Article 1, §§ 7 and 9 of the Connecticut Constitution.[5]  The sole issue on appeal was whether the defendant State Police

---

[5]  The plaintiff in *Martin* also argued that suit was authorized against the defendant state police officers arguing that the Connecticut Supreme Court in *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), had recognized a cause of action under article first, § 7 of the Constitution of Connecticut.  *See Martin*, *supra*, 64 Conn. App. 433, 780 A.2d 961 (2001), overruled on other grounds, 261 Conn. 372, 802 A.2d 814 (2002).  The *Martin* court rejected that argument, holding that *Binette* applied only to municipal defendants and did not waive sovereign immunity for state officials.

officers were entitled to immunity from suit by virtue of statutory, personal immunity under Connecticut General Statutes § 4-165 and, therefore, were not liable to the plaintiff for their alleged acts of misconduct.  *Id.,* 261 Conn. At 373.

In the posture of that case, the Court deemed it necessary, in order to resolve the claim of statutory immunity, to examine the pleadings to decide whether the plaintiff had alleged sufficient facts with respect to personal immunity under § 4-165 to support a conclusion that the defendants were acting outside the scope of their employment or wantonly, recklessly or maliciously.  In *Martin*, the complaint alleged three separate instances of misconduct on the part of the State Police defendants.  The plaintiff alleged:  (1) that the defendants forcibly entered his home without a search warrant, striking him and pushing him to the floor after he submitted to arrest; (2) that the defendants searched his home pursuant to a search warrant obtained pursuant to a false affidavit; and (3) during the search, smashed windows and broke down doors.  *Id.,* at 377.

The Court reasoned that, in order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted state authority, it is necessary to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment.  *Id.,* at 378.  The Court referred to its previous decisions in the cases of *Antinerella v. Rioux,* 229 Conn. 479, 499, 642 A.2d 699 (1994), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325, where it found the defendant's conduct to fall outside the umbrella of immunity because "[t]he defendant's alleged conduct [in soliciting and accepting illegal kickbacks from his deputy sheriffs] was not designed to advance any interest of his employer, the state, and did not serve any legitimate state interest … [being] motivated by purely personal

considerations entirely extraneous to his employer's interests," and in *Shay v. Rossi, supra,* at 174, where it determined that "the defendants, individuals employed by the state department of children and families, had acted beyond the scope of their employment when acting 'solely … to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted …,'" in determining that the allegations of improper search and seizure on the part of State Police officers, with which it was presently confronted, unlike the allegations in *Antinerella* and *Shay*, were *not* arguably outside the scope of employment of the police defendants. *Martin, supra,* at 378-79.

The Martin court next considered whether the plaintiff had sufficiently alleged facts so as to cause the defendants' conduct to fall within the statutory exception for "wanton, reckless or malicious" conduct. Concluding that the plaintiff had failed to carry his burden in this regard, the Court reasoned as follows:

> we have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165. In the common-law context, however, we have stated: In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . In order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious.

*Id.,* at 379 (Internal quotation marks omitted.).  Observing that the facts alleged in the complaint were not inconsistent with an exercise of the statutory authority provided to the State Police pursuant to Connecticut General Statutes § 53a-22, the *Martin* Court concluded that there was no allegation in the complaint from which it could infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to such a level of egregiousness necessary to be considered wanton, reckless or malicious.  *Id.,* at 380.

The foregoing analysis of statutory immunity conducted by the *Martin* court in that case is similarly dispositive of the allegations of the Revised Amended Complaint herein.  The allegations contained in the *Martin* complaint and those in the instant lawsuit are virtually indistinguishable.  The plaintiff's claims of malicious prosecution and abuse of process are insufficient to defeat statutory immunity pursuant to § 4-165.  Indeed, the temporary detention, investigation and apprehension of a suspect falls squarely within the statutory duties of our state police officers.  Moreover, the Revised Amended Complaint is devoid of the sorts of allegations which would arguably carry a State Police defendant's alleged conduct outside the scope of his official duties into an area which could reasonably be construed as wanton, reckless or malicious as the meaning of those terms have been interpreted by the Connecticut courts when examining the extent of immunity under § 4-165.  Indeed, if the instant claims were to be held as beyond the scope of a police officer's authority sufficient to overcome the bar of statutory immunity, the doctrine would be diminished to meaningless verbiage.  Such was clearly not the intent of the legislature when it enacted on behalf of state officers and employees sued in their individual capacities the statutory protection from suit contained in § 4-165.

The state defendants are entitled to the cloak of sovereign and statutory immunity on the pendent state law claims. If the plaintiff wishes to proceed on the state law claims, she is required to file her state law claims before the Claims Commissioner in order to seek and, if possible, obtain a waiver of sovereign and/or statutory immunity.[6] In the context of this proceeding, however, the defendants are entitled to summary judgment on these claims.

## V.    THE PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION AGAINST THE DEFENDANTS MUST FAIL.

In Connecticut, a state law malicious prosecution cause of action requires allegations that "1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff;[7] 2) the criminal proceedings have terminated in favor of the plaintiff; 3) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice;[8] and 4) the defendant acted without probable cause ...."[9] *Mulligan v. Rioux,* 229 Conn. 716, 731-32 and notes 19-20, 643 A.2d 1226 (1994), *citing Zenick v. O'Brien,* 137 Conn. 592, 79 A.2d 769 (1951); *see also, McHale v. W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982).

---

[6] Indeed, even assuming that the plaintiff obtains a waiver of the State's sovereign or statutory immunity through the process established under Chapter 53 of the Connecticut General Statutes, the waiver of immunity is limited to a trial to the court held in the Superior Courts of the State of Connecticut. *See* Conn. Gen. Stat. § 4-160.

[7] With regard to the first element, plaintiff must prove that he was "wrongly charged with criminal conduct" which could have jeopardized his bodily freedom or reputation. *McHale v. W.B.S. Corporation,* 187 Conn. 444, 448, 446 A.2d 815 (1982).

[8] In a malicious prosecution action, the defendant has acted with malice if he or she acted primarily for an improper purpose, that is for a purpose other than that of securing the proper adjudication of the claim on which the proceedings are based, such as a desire to occasion expense to the other party. *Mulligan v. Rioux,* 229 Conn. 716, 732, 643 A.2d 1226 (1994) (internal quotations omitted) (citations omitted).

[9] With regard to the third element, the existence of probable cause is an absolute protection. Matters surrounding the sufficiency of probable cause are always questions of law. *Vandersluis v. Weil,* 176 Conn. 353, 356, 407 A.2d 98 (1978).

A proceeding is terminated in favor of the accused only when its final disposition indicates that he is not guilty. *See Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir. 1980). Such a favorable termination of proceedings would not include cases in which a criminal defendant is granted a *nolle* or dismissal of charges following 1) a program of accelerated rehabilitation, *see Roesch v. Otarola,* 980 F.2d 850, 852-54 (2d Cir. 1992); 2) the pre-trial diversion of criminal charges against the plaintiff, *see Taylor v. Gregg,* 36 F.3d 453, 455-56 (5th Cir. 1994); or even 3) the dismissal of charges in return for some tangible consideration from the accused. *Evans v. Ball,* 168 F.3d 856, 859 (5th Cir. 1999). Essentially, in order to achieve a favorable termination of the charges sufficient to support a malicious prosecution claim, an accused must pursue his criminal case to an acquittal or an unqualified dismissal. *Roesch v. Otarola,* 980 F.2d at 853.

Here, it is clear that neither Trooper Johnson nor Commissioner Spada had anything to do with the arrest of the plaintiff, and had no basis upon which they could judge for themselves the existence or absence of probable cause with which to support such an arrest. As such, any claim against these defendants for malicious prosecution must fail. As for Trooper Marsh, as argued above, probable cause existed for the arrest of the plaintiff on each of the charged offenses. Although probable cause need only exist to support the arrest of the plaintiff for any one of these offenses, it is clear that the existence of such probable cause for the plaintiff's arrest -- regardless of the ultimate disposition of the charges against her -- is dispositive of this claim. As such, summary judgment must be issued in favor of the defendants on this claim.

26

**VI.    THE PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS AGAINST THE DEFENDANTS MUST FAIL.**

It is well settled in Connecticut that an action for abuse of process lies against any person using "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Mozzochi v. Beck,* 529 A.2d 171, 204 Conn. 490 (1987); *citing Varga v. Pareles,* 137 Conn. 663, 667, 81 A.2d 112 (1951); *Schaefer v. O.K. Tool Co.,* 110 Conn. 528, 532-33, 148 A. 330 (1930). As described in *Mozzochi,* the gravamen of the action for abuse of process is the use of "a legal process ... against another primarily to accomplish a purpose for which it is not designed...." *Id.,* 204 Conn. at 494 (Emphasis added.) *Mozzochi* explains that the use of the term "primarily" is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id., citing* Restatement Second (1977) of Torts, § 682, Comment b; *see also,* 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121. Thus, the Supreme Court has held that in order to prove a claim for abuse of process, a plaintiff must "point to specific misconduct intended to cause specific injury outside the normal contemplation of private litigation." *Mozzochi v. Beck,* 204 Conn. at 497. Any "incidental motive of spite or an ulterior purpose of benefit to the defendant is not sufficient to constitute a cause of action for abuse of process." *Jackson v. R. G. Whipple, Inc.,* 225 Conn. 705, 720, 627 A.2d 374 (1993).

Here, as for malicious prosecution, the existence of probable cause to support the arrest of the plaintiff for one or more of the charged offenses is an absolute defense to a claim for abuse

of process.  Perforce, the plaintiff cannot be the subject of abuse of the arrest process if probable cause existed.

Additionally, it is clear that Trooper Johnson and Commissioner Spada did not arrest the plaintiff, and played no part in her subsequent prosecution, however brief it may have been. Consequently, whether on the merits of the claim itself, or upon the basis of their non-involvement in the underlying arrest, the defendants are entitled to summary judgment in their favor on this claim.

## VII.    THE PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED.

Completely aside from the Court's determination as to the viability of the state law claims on the basis of sovereign immunity or the ultimate merits of the claims, the plaintiff's remaining state law claims should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).  Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction."  As the Practice Commentary following 28 U.S.C.A. § 1367 notes, in this situation, judicial discretion is "a particularly important element.  Here, the 'may' in 'may decline' has a major role to play."  Commentary at p. 835.  The Commentary goes on to state that the district court, in exercising its discretion, should undertake a "case-specific analysis," considering such factors as the point in the litigation when the main claim is dismissed.

Justice Brennan, in the well-known case of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), stated that principles of comity, federalism, and the interests of justice dictate that needless decisions of state law should be avoided.  Under *Gibbs,* a federal district court should consider and weigh in each case the values of judicial economy,

28

convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case involving pendent state-law claims.  *Gibbs* suggested strongly that, if federal claims are dismissed before trial, the state claims should also be dismissed.  *Id.,* 383 U.S. at 726-27, 86 S.Ct. at 1138.  *See also, Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); 3A Moore's Federal Practice ¶ 18.02 {4.2} at 18-22; *Pitchell v. Callan,* 13 F.3d 545 (2d Cir. 1994).  Indeed, the Second Circuit has made clear that, where the federal claims are dismissed prior to trial, declining to exercise jurisdiction over the state claims is the preferred course of action.  *See, e.g., DiLaura v. Power Authority of New York,* 982 F.2d 73 (2d Cir. 1992).  Thus, where a plaintiff pleads a federal cause of action and derivative state law claims in the same complaint, the state law claims cannot survive a finding that the federal law claims are legally insufficient.  *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997); *Lennon,* 66 F.3d at 426 (Having dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault, unlawful imprisonment, and malicious prosecution); *A. Aiudi & Sons v. Plainville,* 862 F. Supp. 737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated court's subject matter jurisdiction over state law claims).

    This august body of law is dispositive of the plaintiff's state law claims in this lawsuit as well.  Consequently, upon a judgment in favor of the defendants as to the § 1983 claims, the remaining state law claims should simply be dismissed.

## **CONCLUSION**

    For all of the foregoing reasons, judgment should be issued in favor of the below named defendants in this matter.

DEFENDANTS
Joseph Marsh, Gudrun Johnson,  and Arthur
Spada

RICHARD BLUMENTHAL
ATTORNEY GENERAL


By: ___/s/_____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut 06105
Tel. (860) 808-5450
Federal bar #ct05129
E-mail: stephen.sarnoski@po.state.ct.us




**CERTIFICATION**

I hereby certify that a copy of the foregoing motion was mailed this _____ day of

_____, _____, to the following pro se parties and/or counsel of record:

A. Paul Spinella, Esq.
Law Offices of A. Paul Spinella & Associates
1 Lewis Street
Hartford, Connecticut 06103




_/s/_____
Stephen R. Sarnoski
Assistant Attorney General