UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOAN CALLUM, | : | NO. 3:02CV-0057 (AHN) |
| *plaintiff,* | : | |
| | : | |
| V. | : | |
| | : | |
| TOWN OF COLCHESTER, *et al.,* | : | |
| *defendants.* | : | OCTOBER 8, 2004 |

**STATEMENT OF MATERIAL FACTS AND
LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, the below named defendants respectfully offer the following statement of material facts in support of the motion for summary judgment.

1. At all times relevant to this lawsuit, the defendant, Joseph Marsh, was a Connecticut State Police trooper assigned to the Colchester, Connecticut State Police barracks. *See* Second Amended Complaint, ¶ 1.

2. At all times relevant to this lawsuit, the defendant, Gudrun Johnson, was a Connecticut State Police trooper assigned to the Danielson, Connecticut State Police barracks. *See* Second Amended Complaint, ¶ 2; Affidavit of Gudrun Johnson, ¶¶ 1-2.

3. At all times relevant to this lawsuit, Arthur Spada was the Commissioner of Public safety for the State of Connecticut. *See* Second Amended Complaint, ¶¶ 3-4; Affidavit of Arthur Spada, ¶¶ 1-2

4. On December 20, 2000, Trooper Marsh was conducting laser speed enforcement on Route 2 westbound near Exit 16 in the Town of Colchester, Connecticut. *See* Joseph Marsh's

Responses to Plaintiff's Interrogatories and Requests for Production, Inspection and Examination dated March 5, 2002 ( hereinafter referred to as "Discovery responses"), Report #K00-401109, p. 3.

    5. At about 11:43 p.m., using his laser speed detecting device, Trooper Marsh detected a vehicle traveling westbound on Route 2 at a speed of 78 mph in the posted 65 mph speed limit zone.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3.

    6. After detecting the speeder, Trooper Marsh pulled his State Police cruiser out from its stationary position and attempted to catch up with it.  In so doing, trooper marsh activated his emergency lights and siren, and attempted to pull the violator over to the side of the road.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3;  Deposition Transcript of Joan Callum, pp. 37-38.

    7. As Trooper Marsh pursued the violator, it moved from the left hand traffic lane into the right hand traffic lane, but did not immediately stop in response to his signal.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3;  Deposition Transcript of Joan Callum, pp. 37-38.

    8. After stopping the violator, Trooper Marsh approached the driver's side of the vehicle and conversed with the operator.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3;  Deposition Transcript of Joan Callum, pp. 42-44.

    9. The operator of the vehicle, Joan Callum, did not know whether or not she had been exceeding the posted speed limit.  *See* Deposition Transcript of Joan Callum, pp. 34-36.

10. The operator of the vehicle, Joan Callum, was not wearing corrective lenses for her eyes at the time she was stopped. *See* Deposition Transcript of Joan Callum, p. 53; Affidavit of Gudrun Johnson, ¶ 8.

11. Trooper Marsh accused Joan Callum of being drunk. Joan Callum denied that she had been drinking. *See* Deposition Transcript of Joan Callum, p. 43.

12. Trooper Marsh then asked Joan Callum to look into his flashlight beam. Joan Callum complied. Trooper Marsh then asked her why her eyes were glassy. *See* Deposition Transcript of Joan Callum, p. 44.

13. Joan Callum told Trooper Marsh that she was coming from Foxwoods Casino and was on her way home. *See* Deposition Transcript of Joan Callum, pp. 15, 30-31, 48.

14. Trooper Marsh did not detect any odor of alcohol on Joan Callum's breath, but did observe that she appeared to be wobbling back and forth in the front seat of her vehicle. *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3.

15. A female passenger in Callum's vehicle told Trooper Marsh that Joan Callum was diabetic. *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3; Deposition Transcript of Joan Callum, p. 49.

16. Trooper Marsh performed the Horizontal Gaze Nystagmus test on Joan Callum's eyes in an attempt to ascertain whether she showed signs of intoxication while she sat in her vehicle. *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3; Deposition Transcript of Joan Callum, p. 46.

17. Trooper Marsh asked Joan Callum to produce her driver's license, vehicle registration certificate and proof of insurance. Joan Callum had difficulty finding her documents

and had to be reminded several times what it was that she was looking for.  It took Joan Callum about five minutes to locate the requested paperwork.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 3; Deposition Transcript of Joan Callum, pp. 51-52.

18. According to the restrictions on Joan Callum's Connecticut Operator's License, she was required to wear corrective lenses while driving.  *See* Affidavit of Gudrun Johnson, ¶ 8.

19. Trooper Marsh asked Joan Callum to step out of her vehicle in order to perform some field sobriety tests.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 4; Deposition Transcript of Joan Callum, p. 59, 61-71.

20. Joan Callum performed several tests correctly, but was unable to count backwards from 2,000 when asked to do so by Trooper Marsh.  *See* Deposition Transcript of Joan Callum, p. 59, 61-71.

21. Trooper Marsh placed Joan Callum under arrest, handcuffed her without incident, and transported her to the Colchester State Police barracks for processing.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 4; Deposition Transcript of Joan Callum, p. 59, 72-73, 81-82.

22. At the barracks, Trooper Marsh called for a female trooper, Gudrun Johnson, to assist in processing Joan Callum.  *See* Joseph Marsh's Discovery Responses, Report #K00-410109, p. 4.

23. Upon arrival at the Colchester State Police barracks, Trooper Johnson met with Trooper Marsh who introduced her to Joan Callum.  Trooper Marsh explained that Ms. Callum had been arrested for driving a motor vehicle while under the influence of alcohol or drugs, and

that, according to statute, he was required to obtain urine samples from her.  The samples were intended to be used as evidence in his case.  *See* Affidavit of Gudrun Johnson, ¶ 5.

24.  Consistent with standard protocol, Trooper Johnson escorted Joan Callum to a secure lavatory facility where she instructed Callum to urinate in a standard sample bottle.  Joan Callum was angry and uncooperative at this time, insisting that she was not drunk.  Joan Callum was initially hesitant to provide the required urine sample.  However, Trooper Johnson suggested to her that if she was indeed innocent as she was saying, the sample would help to exonerate her.  Following this, Ms. Callum agreed to give the urine sample as requested.  *See* Affidavit of Gudrun Johnson, ¶ 6.

25.  After the urine sample was given, the bottle was sealed and returned to Trooper Marsh.  Because Ms. Callum was required to give a second urine sample thirty minutes following the first one, Trooper Johnson remained at the barracks to assist.  *See* Affidavit of Gudrun Johnson, ¶ 7.

26.  While Trooper Marsh was completing the arrest paperwork for Ms. Callum, Trooper Johnson had occasion to inspect her Connecticut Operator's License.  She observed that the license had "B" restrictions placed upon it -- indicating that Ms. Callum was required to wear corrective lenses while operating a motor vehicle.  Trooper Johnson informed Trooper Marsh of her observation.  Through personal observation and discussion with Ms. Callum, Trooper Johnson also learned that Callum did not have any eyeglasses, and was not wearing contact lenses.  Accordingly, at the time she was stopped by Trooper Marsh, she was operating her vehicle in violation of Connecticut law -- specifically, Connecticut General Statutes § 14-36(f).  *See* Affidavit of Gudrun Johnson, ¶ 8.

27. Upon the expiration of thirty minutes, Trooper Johnson escorted Joan Callum back to the bathroom where she gave a second urine sample using the standard sample bottle. This sample, like the first, was sealed and returned to Trooper Marsh for processing. *See* Affidavit of Gudrun Johnson, ¶ 9.

28. Throughout her encounter with the plaintiff, Trooper Johnson treated Joan Callum nicely. *See* Deposition Transcript of Joan Callum, pp. 88-89.

29. Trooper Johnson never had the opportunity to observe Joan Callum on Route 2 at the scene of her arrest. Trooper Johnson did not meet her until some time after she had been transported to the Colchester State Police Barracks for arrest processing. Therefore, Trooper Johnson had no knowledge whatsoever regarding the justification, if any, for Callum's arrest. *See* Affidavit of Gudrun Johnson, ¶ 11.

30. While processing Joan Callum, Trooper Marsh shoved her into a cell. When shoved, Joan Callum stumbled, but did not fall. Trooper Marsh did not hurt Joan Callum when he shoved her. *See* Deposition Transcript of Joan Callum, pp. 94-95.

31. While searching Joan Callum following her arrival at the Colchester State Police barracks, Trooper Marsh yanked Callum's hat off of her head. *See* Deposition Transcript of Joan Callum, p. 95.

32. After she was processed, Trooper Marsh charged Joan Callum with Speeding in violation of Connecticut General Statutes § 14-219c, Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs in violation of Connecticut General Statutes § 17-227a, and Operating A Motor Vehicle Outside of License Restrictions in violation of Connecticut General Statutes. Joan Callum was released from custody on a $500 non-surety bond. *See* Joseph

Marsh's Discovery Responses, Report #K00-410109, pp. 4-5 and Critical Incident Log, p. 189;

Deposition Transcript of Joan Callum, pp. 91-92.

          DEFENDANTS
          Joseph Marsh, Gudrun Johnson, and Arthur Spada

          RICHARD BLUMENTHAL
          ATTORNEY GENERAL

          By: __/s/_____
          Stephen R. Sarnoski
          Assistant Attorney General
          MacKenzie Hall
          110 Sherman Street
          Hartford, Connecticut 06105
          Tel. (860) 808-5450
          Federal bar #c05129
          E-mail: stephen.sarnoski@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing motion was mailed this _____ day of _____, _____, to the following pro se parties and/or counsel of record:

A. Paul Spinella, Esq.
Law Offices of A. Paul Spinella & Associates
1 Lewis Street
Hartford, Connecticut 06103

          _/s/_____
          Stephen R. Sarnoski
          Assistant Attorney General