UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOAN CALLUM,                          :
                                      :
          Plaintiff,                  :
                                      :
          v.                          :
                                      :    CIVIL NO. 3:02cv57(AHN)
JOSEPH MARSH;                         :
GUDRUN JOHNSON; and                   :
ARTHUR SPADA;                         :
                                      :
          Defendants.                 :

<u>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

This is an action brought pursuant to 42 U.S.C. § 1983 and
state common law by the plaintiff, Joan Callum ("Callum"),
against the defendants, Connecticut State Police Troopers Joseph
Marsh ("Marsh") and Gudrun Johnson ("Johnson"), and the former
Commissioner for Public Safety, Arthur Spada ("Spada").  Callum
claims that Troopers Marsh and Johnson unlawfully arrested her
and used excessive force against her in violation of § 1983
(Count One); that Spada failed to properly promulgate training
guidelines and regulations concerning arrest and use of force,
failed to adequately screen, hire and retain candidates for the
position of state police trooper, failed to train troopers in the
proper performance of their duties, and failed or refused to take
appropriate disciplinary action against Marsh and Johnson as a
result of their actions toward Callum (Count Two); and that the
actions of all three defendants constituted the torts of
malicious prosecution and abuse of process (Counts Three and

Four).  Pending before the court is the motion for summary judgment filed by the defendants  [doc. # 62].  For the reasons discussed below, the motion is GRANTED.

Facts

In opposing the defendants' motion for summary judgment, Callum has failed to file a Local Rule 56(a)2 Statement. Accordingly, the following material facts as set forth in the defendants' 56(a)1 Statement are deemed admitted.  See Sanchez v. Univ. of Conn. Health Care, 292 F.Supp.2d 385, 390 (D.Conn.2003).

On December 20, 2000, Trooper Marsh was conducting laser speed enforcement on Route 2 westbound near Exit 16 in the Town of Colchester, Connecticut.  At about 11:43 p.m., using his laser speed-detecting device, Trooper Marsh detected a vehicle, operated by Callum, traveling westbound on Route 2 at a speed of 78 mph in the posted 65 mph speed limit zone.

After detecting the speeding vehicle, Trooper Marsh pulled his State Police cruiser out from its stationary position and attempted to catch up to it.  In so doing, Trooper Marsh activated his emergency lights and siren, and attempted to pull the violator over to the side of the road.

As Trooper Marsh pursued the vehicle, it moved from the left hand traffic lane to the right hand traffic lane, but did not immediately stop in response to his signal.  After the vehicle stopped, Trooper Marsh approached the driver's side, and spoke to

Callum who stated that she did not know whether she had been exceeding the posted speed limit.

Trooper Marsh accused Callum of being drunk.  Callum denied that she had been drinking.  Trooper Marsh then asked Callum, who was not wearing glasses, to look into his flashlight beam. Callum complied.  Trooper Marsh then asked her why her eyes were glassy.  Callum told Trooper Marsh that she was on her way home from the Foxwoods Casino.  Trooper Marsh did not detect any odor of alcohol on Callum's  breath, but he did observe that she was wobbling back and forth in the front seat of her vehicle.  A female passenger in Callum's car told Trooper Marsh that Callum was a diabetic.

While Callum remained in the vehicle, Trooper Marsh performed the Horizontal Gaze Nystagmus test on her eyes in an attempt to ascertain whether she showed signs of intoxication. Trooper Marsh also asked Callum to produce her driver's license, vehicle registration certificate, and proof of insurance.  Callum had difficulty finding these documents and had to be reminded several times what she was looking for.  It took Callum about five minutes to locate the requested paperwork.

Trooper Marsh asked the plaintiff to step out of her vehicle to perform field sobriety tests.  Callum performed several tests correctly, but she was unable to count backwards from 2,000. Trooper Marsh then placed Callum under arrest, handcuffed her

3

without incident and transported her to the Colchester State Police barracks for processing.

At the barracks, Trooper Marsh called for a female trooper, Gudrun Johnson ("Johnson"), to assist in processing Callum.  When she arrived at the Colchester State Police barracks, Trooper Johnson met with Trooper Marsh who introduced her to Callum. Trooper Marsh explained to Trooper Johnson that Callum had been arrested for driving a motor vehicle while under the influence of alcohol or drugs and that, as required by statute, Trooper Johnson would have to obtain urine samples from Callum.  The samples were intended to be used as evidence in this case.

Consistent with standard protocol, Trooper Johnson escorted Callum to a secure lavatory facility where she instructed Callum to urinate in a standard sample bottle.  Callum was angry and uncooperative at this time, insisting that she was not drunk. Callum was initially hesitant to provide the required sample. However, Trooper Johnson suggested to her that if she was indeed innocent, the sample would help to exonerate her.  Following this, Callum agreed to give the urine sample as requested.

After the urine sample was given, the bottle was sealed and turned over to Trooper Marsh.  Because Callum was required to give another urine sample 30 minutes following the first one, Trooper Johnson remained at the barracks to assist.

While Trooper Marsh was completing the arrest paperwork for

4

Callum, Trooper Johnson inspected Callum's Connecticut Operator's License.  She observed that the license contained a restriction that required Callum to wear corrective lenses while operating a motor vehicle.  Trooper Johnson informed Trooper Marsh of this license restriction.  Through personal observation and discussion with Callum, Trooper Johnson concluded that Callum did not have any eyeglasses and was not wearing contact lenses.  Accordingly, at the time she was stopped by Trooper Marsh, she was operating her vehicle in violation of Connecticut General Statutes 14-36(f).

After thirty minutes, Trooper Johnson escorted Callum back to the lavatory for the second urine sample.  This sample, like the first, was sealed and given to Trooper Marsh for processing.  Throughout her encounter with Callum, Trooper Johnson treated Callum nicely.

Trooper Johnson did not have the opportunity to observe Callum on Route 2 or at the scene of her arrest.  Trooper Johnson did not meet Callum until sometime after she had been transported to the Colchester State Police barracks for arrest processing.

While processing Callum, Trooper Marsh shoved her into a cell, causing her to stumble, but not causing her to fall.  Callum was not hurt.  While searching Callum after she arrived at the Colchester State Police barracks, Trooper Marsh yanked the hat off Callum's head.

5

After Callum was processed, Trooper Marsh charged her with speeding in violation of Connecticut General Statutes § 14-219c, Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs in violation of Connecticut General Statutes § 17-227a, and Operating a Motor Vehicle Outside of License Restrictions in violation of  Connecticut General Statutes.  Callum was released from custody on a $500 non-surety bond.

All of the charges against Callum were subsequently dismissed.

### Standard of Review

A Rule 56 motion for summary judgment may be granted if the court determines that the moving party is entitled to judgment as a matter of law because there are no genuine issues of material fact to be tried.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).  After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-85 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

6

In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248; Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985)). The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. See Anderson, 477 U.S. at 248. A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

## Discussion

The defendants move for summary judgment on Callum's § 1983

claims of unlawful arrest and excessive force against Troopers Johnson and Marsh, on her § 1983 claim against Spada based on supervisory liability, and on the malicious prosecution and abuse of process claims against all three defendants.[1]

I.   § 1983 Claims Against Troopers Marsh and Johnson

Troopers Marsh and Johnson move for judgment on Callum's § 1983 false arrest and excessive force claims on the grounds that (1) there was probable cause to support Callum's arrest for the charges filed against her, and (2) there is no evidence that they used excessive force against Callum during the course of the arrest.  In opposition, Callum asserts that there are disputed material issues of fact as to whether Trooper Marsh had probable cause to arrest her and whether force was used against her.

A.   Probable Cause

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Probable cause to arrest constitutes justification, and, therefore, when an arresting officer has probable cause to arrest the plaintiff, there can be no cause of action for false arrest.

---

[1]Previously, Callum's First Amendment, substantive due process and procedural due process claims were dismissed. Additionally, Callum withdrew all claims against the State of Connecticut, all claims against the defendants in their official capacities, and claims under the Fifth and Sixth Amendments.

Id. Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id.; see also, e.g., Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996). Whether probable cause existed is a question that may be resolved on a motion for summary judgment if there is no dispute as to the pertinent events and knowledge of the officers. See Weyant, 101 F.3d at 852; Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995). If there is no genuine issue of material fact, then a claim for false arrest will be defeated, as it is "well established that the existence of probable cause is an absolute defense to a false arrest claim and affords the arresting officer qualified immunity from litigation." Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002). Because the existence of probable cause depends on the probability, rather than the certainty, that criminal activity has occurred, the validity of an arrest does not require an ultimate finding of guilt. See Pierson v. Ray, 386 U.S. 547, 555 (1967).

If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate. See Franco-de Jerez v. Burgos, 876 F.2d 1038 (1st Cir. 1989). Thus,

the fact that the person arrested, if asked, would deny the allegation of wrongdoing is of no significance to the defendant's formulation of probable cause.  See Baker v. McCollan, 443 U.S. 137, 145-46 (1979).

Even if probable cause to arrest is ultimately found not to have existed, an arresting officer would still be entitled to qualified immunity from suit for damages if he can establish that there was "arguable probable cause" to arrest.  See Escalera, 361 F.3d at 743.  "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991)); see also Caldarola, 298 F.3d at 162 ("In situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.").  As the Second Circuit has explained, "[T]he analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; "arguable probable cause" will suffice to confer qualified immunity for the arrest."  Escalera, 361 F.3d at 743.

Here, Callum was arrested for: (1) operating a motor vehicle under the influence of alcohol or drugs, (2) speeding, and (3) operating a motor vehicle outside of her license restrictions.

10

The court concludes that on the facts in the record, Trooper Marsh[2] had probable cause to arrest Callum for all three offenses.

Using a laser speed detecting device, Trooper Marsh clocked Callum traveling at a speed of 78 mph in a posted 65 mph zone. Callum's self-serving, conclusory denial that she was speeding is insufficient to defeat the testimony and report of Trooper Marsh. See Baker, 443 U.S. at 145-46; see also Newby v. Town of Cromwell, 25 F.Supp.2d 56 (D. Conn. 1998) (holding that a self-serving denial of allegations is not sufficient to establish a lack of probable cause).  Moreover, Callum admitted in her deposition testimony that it was possible that she was speeding. (Callum's Dep. pps. 34-36.)  Trooper Marsh's incident report containing his observations is sufficient to establish probable cause that the plaintiff was speeding.  Moreover, as noted, because Callum did not submit a Local Rule 56(a)(2) Statement, the defendants' uncontroverted statements are accepted as true and thus, there can be no dispute as to whether Trooper Marsh had probable cause to arrest Callum for speeding.

The same conclusion must be reached as to Trooper Marsh's

_____

[2]Additionally, because Trooper Johnson had no involvement in Callum's arrest except to obtain the required urine samples, the court grants summary judgment as to Trooper Johnson on Callum's § 1983 arrest claims.  See Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) (holding that absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.)

probable cause to arrest Callum for driving outside of the restrictions on her driver's license.  Callum's drivers license required her to wear corrective lenses for her eyes while operating a motor vehicle.  Callum admitted that she does not adhere to this restriction.  Both Trooper Marsh and Trooper Johnson observed Callum without her glasses.  Callum did not have glasses on her person when she was arrested.  There is no merit to Callum's legally unsupported assertion that probable cause did not exist because Trooper Marsh did not become aware of the restriction on her license until she was taken into custody. Because the undisputed facts establish that Callum was not wearing corrective lenses at the time Trooper Marsh stopped her vehicle, Trooper Marsh had probable cause to arrest Callum for this offense.

Finally, there is also no merit to Callum's argument that Trooper Marsh did not have probable cause to arrest her for driving under the influence of alcohol or drugs.  As the defendants point out, eight factors contributed to Trooper Marsh's decision to arrest Callum for driving under the influence: (1) Callum was speeding; (2) it took a significant amount of time for her to pull over; (3) Callum's eyes appeared glassy ; (4) Callum was coming from the casino; (5) Callum failed to complete the horizontal gaze nystagmus test; (6) Callum wobbled in her vehicle; (7) it took Callum an inordinate amount

12

of time to locate her license, registration and insurance paperwork, and (8) Callum was unable to count backwards from 2,000. Based on these facts, a reasonable officer would conclude that Callum was driving under the influence. <u>Newby</u>, 25 F.Supp.2d at 58. This is so despite Callum's assertions that (1) she was not drinking, (2) she had passed some of the field sobriety tests, and (3)Trooper Marsh admitted that he did not smell alcohol.

The undisputed facts surrounding Trooper Marsh's stop of Callum's vehicle gave him probable cause to arrest her for driving under the influence, speeding and violating license restrictions.[3] But even if probable cause was lacking for one or even two of these offenses, Callum's arrest would still be supported by probable cause. It is well settled that where there is probable cause to arrest for one of several offenses that are ultimately charged, that is sufficient to defeat a claim of false arrest based on the absence of probable cause for the other offenses. <u>See</u>, <u>e.g.</u>, <u>Avery v. King</u>, 110 F.3d 12 (6th Cir. 1997); <u>Biddle v. Martin</u>, 992 F.2d 673 (7th Cir. 1993); <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178 (5th Cir. 1990).

_____

[3]Furthermore, the court concludes that Trooper Marsh would also be entitled to qualified immunity from suit for damages based on "arguable probable cause" to arrest on each of the three charges. <u>See</u> <u>Escalera</u>, 361 F.3d at 743.

B.    <u>Excessive Force</u>

To prevail on her § 1983 claim of excessive force, Callum must show that the amount of force used was objectively unreasonable, either as to when or how the force was applied. See <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989); <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996).  Callum must also show that, as a result of the use of force, she suffered some compensable injury.  See <u>Landry v. Irizarry</u>, 884 F.Supp. 788, 799 n. 14 (S.D.N.Y.1995).  Callum has failed to show both.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396 (1989).  To establish the force used to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, a plaintiff must establish that the government interests at stake were outweighed by "the nature and quality of the intrusion on [plaintiffs'] Fourth Amendment interests." <u>Id</u>. The inquiry therefore "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id</u>.  Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive

14

force claim is not appropriate unless no reasonable factfinder could conclude that the officer's conduct was objectively unreasonable.  See e.g., O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003) (denying summary judgment in deadly force case); Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (holding that allegations that police yanked arrestee out of a car, threw her against it, and pinned her arm behind her back were sufficient to withstand summary judgment); Calamia v. City of New York, 879 F.2d 1025, 1035 (2d Cir. 1989) (holding that evidence was sufficient to defeat a motion for summary judgment where there was testimony that a suspected thief, upon answering the police officer's knock at his door, was shoved to the floor, immediately cuffed with his hands behind his back, and kept in that position for five or six hours with the handcuffs unduly tight, despite his complaints, before being taken to the police station).

However, "'[n]ot every push or shove'" is excessive.  See Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)).  Thus, in Roundtree v. City of New York, 778 F.Supp. 614, 622 (E.D.N.Y. 1991), the court dismissed an excessive force claim where the only force the plaintiff alleged was that he was pushed into a car.  The court reasoned that the issue of whether the force used was reasonable "is submitted to the jury only when the court finds itself unable to discern a clear answer."  Id.

15

Here, Callum argues that whether the force used by Trooper Marsh was unreasonable is a jury issue and should not be decided on a motion for summary judgment. In this regard, Callum relies on Armao v. American Honda, 917 F.Supp. 142, 144 (D. Conn. 1966) for the proposition that the mere allegation of "rough treatment" is sufficient to create a triable issue on an excessive force claim. However, Callum's reliance on Armao is misplaced. In Armao, the court made it clear that while a plaintiff need only allege "rough treatment" in the underlying complaint, the plaintiff must prove "actual injury" as a result of the officer's alleged misconduct to avoid summary judgment in an excessive force claim. Moreover, even Bass v. Robinson, 167 F.3d 1041, 1046 n.1 (6th Cir. 1999), which Callum cites for the proposition that the extent of an injury is not a crucial factor in determining whether the force used in a particular case is unreasonable, holds, as courts in this circuit have held, that a plaintiff alleging unreasonable force must nevertheless prove he suffered an actual injury. See Landry v. Irizarry, 884 F.Supp. 788, 799 n. 14 (S.D.N.Y.1995) (actual injury required in excessive force case). Similarly, Callum's citation to the Third Circuit's ruling in Abraham v. Raso, 1883 F.3d 279, 289-90 (3d Cir. 1999) (holding that summary judgment on an excessive force claim was appropriate where the force was objectively reasonable under the circumstances) does nothing to advance her position.

16

Similarly unavailing are the cases on which Callum relies to support her argument that no force was reasonable because no force was required under the circumstances. For, example, in <u>Cox v. Treadway</u>, 75 F.3d 230 (6th Cir. 1996), the Sixth Circuit held that the "no force rule" only applied if the arrestee is restrained and completely under the control of the police. The court noted that the no force rule would apply in situations involving beating and kicking a suspect already under police control or a suspect who is handcuffed and not trying to escape.

In this case, the undisputed material facts reveal that the only force used against Callum was that she was shoved into her cell and her hat was yanked off her head. Callum has alleged no other force. Even if this force was sufficient to get past summary judgment, Callum has not proffered any evidence that she was injured as a result of such force. This omission is fatal to her excessive force claim.

## II. <u>Claims Against Commissioner Spada</u>

Former Commissioner Spada moves for summary judgment on Callum's claim <u>Monell</u> claim against him on the grounds that there is no evidence to substantiate her claims that he is subject to supervisory liability even though he did not directly participate in any of the alleged unconstitutional acts.

To prevail on a § 1983 <u>Monell</u> claim against a supervisory officer who was not personally involved in the alleged

17

constitutional deprivations, the plaintiff must allege and establish that (1) the supervisory defendant responsible for establishing policy adopted a formal policy that caused the violation of the plaintiff's federal constitutional rights; (2) the defendant was personally responsible for the decision that caused the violation; (3) there was a widespread "custom or usage" among subordinate officials that implied constructive acquiescence by the supervisory official; or (4) the supervisory official failed to train or supervise the subordinate employees. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

As Spada correctly points out, Callum's claim against him is based on factually unsupported, conclusory allegations concerning, inter alia, inadequate training, regulations, policies and practices regarding arrests and use of force. Callum cannot defeat Spada's properly supported summary judgment motion because she has failed to submit affidavits, or other materials encompassed by Rule 56(e), setting forth specific facts showing that there is a genuine issue of material fact to be tried.  See Fed. R. Civ. P. 56(e),; see also Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996).  Neither the allegations in her complaint nor her mere conclusory statements that the training provided by Spada was inadequate are sufficient to defeat Spada's motion.  See Gottlieb, 84 F.3d at 518.

In the absence of any evidence showing a pattern of conduct from which it may be inferred that Spada approved or acquiesced to a policy that resulted in the alleged violation, Callum's claim against Spada cannot survive summary judgment. Callum has failed to offer even a shred of evidence from which a jury could reasonably conclude that Spada is liable on a failure to train or supervise theory.  Absent this evidence, no reasonable fact finder could conclude that Spada is liable based on the facts as alleged by Callum.

Because Callum has failed to demonstrate a genuine issue of material fact, the court grants judgment to Spada on this claim.

III. <u>Malicious Prosecution and Abuse of Process</u>

    A.   <u>Malicious Prosecution</u>

To prevail upon a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendants initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.  See <u>McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447 (1982).

Trooper Johnson and Spada maintain that summary judgment is appropriate on Callum's state law claim of malicious prosecution

against them because neither of them were present at the underlying incident and could not judge for themselves whether there was probable cause for Callum's arrest.  Trooper Marsh asserts that because he had probable cause to arrest Callum, she cannot prevail on a claim for malicious prosecution.  The court agrees with the defendants and dismisses the malicious prosecution claims as to all defendants.

    B.   Abuse of Process

    An action for abuse of process lies against a person using "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed."  Mozzochi v. Beck, 204 Conn. 490 (1987).  Liability will not lie "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."   Id., citing Restatement (Second) (1977) of Torts, § 682, Comment b.  A plaintiff must point to specific conduct intended to cause specific injury outside the normal contemplation of private litigation."  Mozzochi, 204 Conn. at 497.

    Callum has proffered no evidence that the defendants used a legal process in an improper manner or for a purpose for which it was not designed.  Indeed, Callum has failed to produce any evidence of spite or ulterior purpose of benefit, much less any specific conduct intended to cause a specific injury as to any

defendants.  With respect to Trooper Johnson and Spada, Callum
has submitted no evidence to indicate that they had any role in
instigating or affirmatively causing her arrest and the court
dismisses the abuse of process claim as to them.  As to Trooper
Marsh, the plaintiff has offered any evidence that he had an
ulterior purpose or objective in facilitating her prosecution.
Accordingly, the defendants are entitled to summary judgment on
the abuse of process claim.

IV.   Sovereign and Statutory Immunity for State Constitutional
      and Common Law Claims

Alternatively, the defendants maintain that summary judgment
is also appropriate because they are entitled to both sovereign
and statutory immunity from liability for the pending state law
claims.[4]  Because Callum's state law claims of malicious
prosecution and abuse of process fail as a matter of law, there
is no need to address the defendants arguments that the state law
claims must be dismissed on the basis of sovereign immunity and
statutory immunity.

---

[4]While the defendants also claim sovereign and statutory
immunity as to state constitutional claims, there are no state
constitutional claims asserted.

21

<u>CONCLUSION</u>

For the foregoing reasons, the motion for summary judgment [doc. # 62] is GRANTED.  The Clerk shall enter judgment for the defendants and close the case.

SO ORDERED this 31st day of March, 2005, at Bridgeport, Connecticut.

_____/s/_____

Alan H. Nevas
United States District Judge
